UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
TERRY CASILLAS,                                                                  07 Civ. 4082 (PKC) (GWG)

                            Plaintiff,

             - against -                                                                        **COMPLAINT**


RICHARD F. DAINES, as Commissioner of the
New York State Department of Health, and
ROBERT DOAR, as Commissioner of the
New York City Human Resources Administration,

                           Defendants.
------------------------------------------------------------------------X

## PRELIMINARY STATEMENT

     1.       Plaintiff T.C. ("Ms. C." or "Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 against RICHARD F. DAINES, acting in his official capacity as Commissioner of the New York State Department of Health and ROBERT DOAR acting in his official capacity as Commissioner of the New York City Human Resources Administration (collectively "Defendants"), to challenge 18 N.Y.C.R.R. § 505.2(l), a New York state regulation pursuant to which Defendants are illegally and wrongfully denying medical assistance coverage to Plaintiff for care, services, drugs and supplies prescribed by Plaintiff's physicians for the purpose of gender reassignment necessary to treat her Gender Identity Disorder, in violation of Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., (hereinafter the "Medicaid Act"), 42 U.S.C. § 1396a(a)(10)(A); 42 U.S.C. § 1396a(a)(10)(B)(i) and 42 U.S.C. § 1396a(a)(17) and their implementing regulations, 42 C.F.R.§ 440.210, 42 C.F.R. § 440.240(b); 42 C.F.R. § 440.230(c); the equal protection clauses of the Fourteenth Amendment to the United

States Constitution, U.S. Const. Amend. XIV, § 1, and the New York State Constitution, N.Y. Const. Art. I, § 11; and New York Social Services Law § 365-a(5).

## JURISDICTION AND VENUE

2. Jurisdiction over this action is conferred upon this Court by 28 U.S.C. §§ 1331; 1343(a)(3); and 1367, which provides for supplemental jurisdiction.

3. Plaintiff's claims for declaratory relief are brought pursuant to 28 U.S.C. §§ 2201 and 2202.

4. Venue properly lies within this judicial district pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides within this judicial district and a substantial portion of the activities complained of occurred within this judicial district.

## PARTIES

5. Plaintiff T.C. resides in the Bronx, New York and is categorically eligible to receive medical assistance ("Medicaid").

6. Defendant Richard F. Daines ("Defendant Daines") is the Commissioner of the New York State Department of Health ("DOH"). As such, he is responsible for the administration of the New York State Medicaid program and supervision of the administration of the state's Medicaid program by the local social services districts. He maintains an office at Corning Tower, Empire State Plaza, Albany, New York.

7. Defendant Robert Doar ("Defendant Doar") is the Commissioner of the New York City Human Resources Administration ("HRA"). As such, he is responsible for the overall operations and decisions of HRA, including the implementation of the New York State Medicaid program in New York City. He maintains an office at 180 Water Street, New York, New York.

**FEDERAL STATUTORY AND REGULATORY SCHEME**

8.   Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., creates the federal Medicaid program, through which the federal government provides matching funds to states to provide medical assistance to residents who meet certain categorical and financial eligibility requirements. 42 U.S.C. § 1396b.

9.   States are not required to participate in the Medicaid program, but if they choose to, they must comply with federal Medicaid statutes and regulations. 42 U.S.C. §§ 1396, 1396a, 1396c.

10.   The federal Medicaid program requires a participating state to establish or designate a single state agency that is responsible for administering or supervising the administration of the state's Medicaid program. 42 U.S.C. § 1396a(a)(5).

11.   Participating states also must submit a "state plan" to the Secretary of the United States Department of Health and Human Services for approval before that state may receive Medicaid funds. 42 U.S.C. § 1396a(a), (b).

12.   A state plan "must include reasonable standards for determining eligibility for and the extent of medical assistance under the plan." 42 U.S.C. § 1396a(a)(17).

13.   An individual is categorically needy for Medicaid if he or she falls into one of the seven eligibility categories set forth in 42 U.S.C. § 1396a(a)(10)(A)(i)(I) – (VII). Persons who receive Supplemental Security Income ("SSI") are eligible and are considered "categorically needy" for Medicaid. 42 U.S.C. § 1396a(a)(10)(A)(i)(I); 42 C.F.R. § 435.120.

14.   The Medicaid Act mandates that a state plan provide for making medical assistance available to all categorically needy individuals by providing at minimum: inpatient hospital

services, outpatient hospital services, laboratory and X-ray services, and physicians' services furnished by a physician. 42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(1), 1396d(a)(2), 1396d(a)(3), 1396d(a)(5).

15.  Pursuant to the Medicaid Act, medical assistance must be provided "in a manner consistent with . . . the best interests of the recipients." 42 U.S.C. § 1396a(a)(19).

16.  The Medicaid Act further requires that "the medical assistance made available to any [categorically needy] individual shall not be less in amount, duration or scope than the medical assistance made available to other such individual." 42 U.S.C. § 1396a(a)(10)(B)(i).

17.  Federal regulations likewise require that medical assistance is provided in equal amount, duration, and scope to all categorically needy Medicaid recipients.
42 C.F.R. § 440.240(b)

18.   Federal regulations require that *all* services defined as required services in 42 C.F.R. §§ 440.10 - 440.50 and 42 C.F.R § 440.70 be provided to *all* categorically needy Medicaid recipients. 42 C.F.R § 440.210(a)(1).

19.  Inpatient hospital services, defined as services that "are ordinarily furnished in a hospital for the care and treatment of inpatients and are furnished under the direction of a physician or dentist," are a required service. 42 C.F.R. § 440.10(a)(1), (2).

20.  Outpatient hospital services, defined as "preventative, diagnostic, therapeutic, rehabilitative, or palliative services that are furnished to outpatients and are furnished by or under the direction of a physician or dentist," are a required service. 42 C.F.R. § 440.20(a)(1), (2).

21. X-ray and other laboratory services must be provided "when ordered and provided by or under the direction of a physician or other licensed practitioner of the healing arts." 42 C.F.R. § 440.30(a).

22. Physicians' services, defined as "services furnished by a physician within the scope of practice of medicine or osteopathy as defined by State law and by or under the personal supervision of an individual licensed under State law to practice medicine or osteopathy," are a required service. 42 C.F.R § 440.50(a)(1), (2).

23. "[E]ach service must be sufficient in amount, duration or scope to reasonably achieve its purpose." 42 C.F.R. § 440.230(b).

24. The "Medicaid agency may not arbitrarily deny or reduce the amount or scope of a required service under sections 440.210 and 440.220 to an otherwise eligible recipient solely because of the diagnosis, type of illness or condition." 42 C.F.R. § 440.230(c).

## NEW YORK STATE STATUTORY AND REGULATORY SCHEME

25. New York State has opted to participate in the federal Medicaid program. N.Y. Soc. Serv. Law § 363-a.

26. The Medicaid program is administered in New York in accordance with Sections 363-369 of the New York Social Services Law, and the regulations promulgated thereunder. N.Y. Soc. Serv. Law §§ 363-369; 18 N.Y.C.R.R. §§ 358, 360, 505 et seq.

27. New York has designated DOH as the single state agency responsible for supervising the administration of the Medicaid program.[1] N.Y. Soc. Serv. Law § 363-a(1).

---

[1] Effective October 1, 1996, DOH assumed the responsibility, formerly held by the New York Department of Social Services ("NYSDSS"), for administration of the New York's Medicaid Program. All regulations of NYSDSS with respect to the Medicaid program continued, in full force and effect, as regulations of DOH. N.Y. Soc. Serv. Law § 363-a(1); 1996 N.Y. Session Law, c. 474, § 242.

28.     New York Social Services Law §§ 363 and 364(2)(e) mandate a "comprehensive program of medical assistance for needy persons . . . to operate in a manner which will assure a uniform high standard of medical assistance throughout the state," in such a way "that the quality of medical care and services is in the best interests of the recipients."  N.Y. Soc. Serv. Law §§ 363 & 364(2)(e).

29.     New York Social Services Law § 365-a establishes the coverage and adequacy of medical assistance under the New York State plan for Medicaid.  N.Y. Soc. Serv. Law § 365-a.

30.     Pursuant to § 365-a(2) thereof, "medical assistance" is defined as "payment of part or all of the cost of care, services and supplies which are necessary to prevent, diagnose, correct or cure conditions in the person that cause acute suffering, endanger life, result in illness or infirmity, interfere with his capacity for normal activity, or threaten some significant handicap."  N.Y. Soc. Serv. Law § 365-a(2).

31.     Medical assistance in New York also includes "surgical benefits for certain surgical procedures which meet standards for surgical intervention, as established by the state commissioner of health on the basis of medically indicated risk factors, and medically necessary surgery where delay in surgical intervention would substantially increase the medical risk associated with such surgical intervention," N.Y. Soc. Serv. Law § 365-a(5)(b), and "surgical benefits for other deferrable surgical procedures specified by the state commissioner of health, based on the likelihood that deferral of such procedures for six months or more may jeopardize life or essential function, or cause severe pain; provided, however, such deferrable surgical procedures shall be included in the case of in-patient surgery only when a second written opinion is obtained from a physician, or as otherwise prescribed, in accordance with regulations

established by the state commissioner of health, that such surgery should not be deferred." N.Y. Soc. Serv. Law § 365-a(5)(c).

32. In New York State, medical assistance coverage includes "[c]onstruction of artificial vagina (vaginal atresia or absence) with or without graft," "[or]chiectomy, simple unilateral, bilateral," and "[a]mputation of penis, partial complete, radical." 18 N.Y.C.R.R. § 533.5

33. 18 N.Y.C.R.R. § 505.2 sets forth eligibility for and the extent of physicians' services provided under the New York State Medicaid plan.

34. On March 25, 1998, DOH amended 18 N.Y.C.R.R. § 505.2 to include the following language:

> Gender reassignment. Payment is not available for care, services, drugs or supplies rendered for the purpose of gender reassignment (also known as transsexual surgery) or any care, services, drugs or supplies intended to promote such treatment.

18 N.Y.C.R.R. § 505.2(l).

## CONSTITUTIONAL PROVISIONS

35. The Fourteenth Amendment to the United States Constitution provides that '[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, §1.

36. Article 1, Section 11 of the New York State Constitution provides that "[n]o person shall be denied the equal protection of the laws of this state or any subdivision thereof." N.Y. Const. Art. I, § 11.

## STATEMENT OF FACTS

### I. GENDER IDENTITY DISORDER

37. GID is defined in the American Psychiatric Association's Diagnostic and Statistical Manual ("DSM-IV-TR") as follows:

> A condition characterized by a strong and persistent cross gender identification and discomfort about one's assigned sex, unrelated to either a perceived cultural advantage of being the other sex or a concurrent physical intersex condition, which results in clinically significant distress or impairment in social, occupation or important areas of functioning.

DSM-IV-TR, §§ 302.06 - 302.85.

38. The medical community and medical literature recognize GID as "an identifiable, severe and incapacitating disease," D. Harish & B. Sharma, Medical Advances in Transsexualism and the Legal Implications, 24 Am. J. Forensic Med. & Pathology, 100, 101 (2003).

39. "Sex reassignment is effective and medically indicated in severe GID. In persons diagnosed with transsexualism or profound GID, sex reassignment surgery, along with hormone therapy and real-life experience, is a treatment that has proven to be effective. Such a therapeutic regimen, when prescribed or recommended by qualified practitioners, is medically indicated and medically necessary. Sex reassignment is not 'experimental,' 'investigational,' 'elective,' 'cosmetic,' or 'optional' in any meaningful sense. It constitutes very effective and appropriate treatment for transsexualism or profound GID." Harry Benjamin International Gender Dysphoria Association, Standards of Care for Gender Identity Disorders 18 (6th Version 2001).

**II.     PLAINTIFF T.C.**

40.     Ms. C. is a categorically needy Medicaid recipient residing in the Bronx. Ms. C. is 48 years old and has been in continuous receipt of Medicaid benefits since approximately 1978.

41.     Ms. C. receives Supplemental Security Income ("SSI") in the amount of $710 per month. She also receives $155 per month in food stamps. These benefits are her sole source of income.

42.     Ms. C. was first diagnosed with Gender Identity Disorder ("GID") in or around 1978.

43.     Ms. C. was a biological male at birth, but has identified as a woman since 1974, when she was 16 years old.

44.     When Ms. C was diagnosed with GID in 1978, she began living as a woman, including conforming her physical appearance to appear as a woman. She also began a course of feminizing hormone therapy that her physicians prescribed as treatment for her GID.

45.     As a result of this prescribed hormone therapy, Ms. C.'s body began the process of transforming to match her gender identity. Ms. C. developed breasts and her facial and body hair lessened so that she no longer needed to shave her facial hair. She developed a more traditionally female body with a smaller waist and larger fat pockets around the hips. The gender reassignment treatment allowed Ms. C. to visibly conform to her female gender identity.

46.     The gender reassignment treatment greatly decreased the debilitating symptoms of GID Ms. C. previously had been experiencing. Ms. C. became more stable and experienced a clinically significant reduction in her distress. Her depression and sense of extreme unease about her body and gender dramatically lessened. She felt more confident to participate in the daily

activities of living because she no longer felt as trapped in the wrong body.  However, Ms. C. continued to experience symptoms of distress and depression in relation to her genitals.

47. From approximately 1980 until around September 2004, Medicaid paid for the hormonal gender reassignment therapy prescribed by Ms. C.'s physicians to treat her GID.

48. Around September 2004, Medicaid terminated coverage of Ms. C's prescribed hormonal gender reassignment therapy without notice.

49. From September 2004 to July 2005, Ms. C was able to continue her prescribed hormonal gender reassignment therapy on an intermittent basis by using a prescription drug discount plan offered by her medical provider.

50. During that period, because of not using hormone therapy consistently, Ms. C. suffered fatigue, anxiety and feelings of isolation and depression.

51. From July 2005 to approximately May 2006, Ms. C. was unable to afford the $125 per month cost of the hormone medications prescribed by her physicians to treat her GID, and was therefore unable to take these prescribed medications.

52. During this period, Ms. C. habitually experienced nausea and body tremors. Because she has been living as a woman for almost thirty years, Ms. C. suffered tremendously as her body began to exhibit male characteristics.  Among other things, the size of Ms. C.'s breasts decreased and she developed hair on her breasts.  Her voice deepened, and her skin became much rougher.  Ms. C. was horrified by these physical changes.

53. Additionally, Ms. C. was born with cryptoorchidism (undescended testes), and her testes had never descended until she stopped taking her prescribed hormone therapy.  However,

as a result of her failure to take her prescribed hormones, Ms. C.'s testes, for the first time in her life, began to descend. Ms. C. found this process physically painful and emotionally devastating.

54. In accordance with Ms. C's identification as a female, around May 2006, Ms. C successfully applied to change the gender listed on her Medicaid card from Male to Female. Shortly thereafter, Medicaid resumed coverage of her prescribed hormonal gender reassignment therapy.

55. However, because of 18 N.Y.C.R.R. § 505.2(l), Medicaid will not pay for the sex reassignment surgery Ms. C needs to treat her gender identity disorder.

56. Ms C. needs gender reassignment surgery in order to achieve the capacity to live a life without terrible suffering. Ms. C. experiences acute interference with her capacity for normal activity as result of Defendants' refusal to provide medical assistance coverage of her gender reassignment treatment.

57. On January 22, 2007, Dr. Sherman Leis, Professor and Chairman of Plastic and Reconstructive Surgery at the Philadelphia College of Osteopathic Medicine, examined Ms. C. and determined that the following gender reassignment treatments are medically necessary to treat her GID at this time: feminizing hormones and vaginoplasty (removal of penis and creation of a vagina) with orchiectomy (removal of the testes). Dr. Leis has issued a written opinion detailing the medical necessity of these procedures to treat Ms. C.'s GID.

58. Ms. C.'s current psychologist, Dr. Suzanne Hirsch at Lincoln Medical and Health Center, whom Ms. C. sees on a bi-monthly basis, has also determined that feminizing hormones and vaginoplasty with orchiectomy are medically necessary to treat Ms. C.'s GID. Dr. Hirsch

has issued a written opinion detailing the medical necessity of these procedures to treat Ms. C.'s GID.

59.     Dr. Brunhild Kring, Deputy Director of Counseling and Behavioral Health Services at New York University and Clinical Assistant Professor of Psychiatry at the Joan and Sanford I. Weill Medical College of Cornell University, a gender dysphoria expert who was Ms. C.'s treating psychiatrist for over three and a half years, has also determined that feminizing hormones and vaginoplasty with orchiectomy are medically necessary to treat Ms. C.'s GID. Dr. Kring has issued a written opinion detailing the medical necessity of these procedures to treat T.C.'s GID.

60.     Ms. C.'s current treating nurse practitioner, Ms. Sue Weiss at Callen-Lorde Medical Center, has issued a written opinion stating that T.C. meets the Harry Benjamin International Gender Dysphoria Association eligibility requirements for sex reassignment surgery.[2]

61.     Defendants provide medical assistance coverage for the surgical procedures indicated by Plaintiff's physicians as medically necessary to treat her GID to Medicaid recipients suffering from other medical conditions. See 18 N.Y.C.R.R. § 533.5.

62.     Medicaid provides treatment for mental illnesses other than GID. 18 N.Y.C.R.R. §§ 505.15, 505.18.

**STATEMENT OF CLAIMS**

**FIRST CAUSE OF ACTION**

63.     By promulgating and implementing 18 N.Y.C.R.R. § 505.2(l), Defendants have violated and are violating Plaintiff's rights under 42 U.S.C. § 1396a(a)(10)(A) and its

---

[2] "Sex reassignment surgery" is a general term for surgical gender reassignment treatment for GID. It includes the surgical procedures prescribed by Ms C.'s treating physicians as treatment for her GID, specifically vaginoplasty with orchiectomy.

implementing regulation 42 C.F.R. § 440.210, by refusing to provide required Medicaid services to Plaintiff, a categorically needy Medicaid recipient

## SECOND CAUSE OF ACTION

64.     By promulgating and implementing 18 N.Y.C.R.R. § 505.2(l), Defendants have violated and are violating Plaintiff's rights under 42 U.S.C. § 1396a(a)(10)(B)(i) and its implementing regulation 42 C.F.R. § 440.240(b), by making available medical assistance to Plaintiff that is less in amount, duration, and scope than the medical assistance made available to other categorically needy Medicaid recipients.

## THIRD CAUSE OF ACTION

65.     By promulgating and implementing 18 N.Y.C.R.R. § 505.2(l), Defendants have violated and are violating Plaintiff's rights under 42 U.S.C. § 1396a(a)(17), 42 U.S.C. § 1396a(a)(10)(B)(i) and their implementing regulation 42 C.F.R. § 440.230(c), by arbitrarily denying and reducing the amount, duration, or scope of a required service under §§ 440.210 and 440.220 to Plaintiff, an otherwise eligible Medicaid recipient, solely because of her diagnosis, type of illness, or condition of GID.

## FOURTH CAUSE OF ACTION

66.     Defendants have violated and are violating Plaintiff's rights under the equal protection clauses of the Fourteenth Amendment to the United States Constitution, U.S. Const. Amend. XIV, § 1, and the New York State Constitution, N.Y. Const. Art. I, § 11, by denying care, services, drugs and/or supplies to Plaintiff to treat her GID while providing the same care, services, drugs and/or supplies to categorically needy Medicaid recipients suffering from illnesses other than GID with no rational basis.

## FIFTH CAUSE OF ACTION

67. Defendants have violated and are violating Plaintiff's rights under New York Social Services Law § 365-a(5), which requires Medicaid to cover certain surgical procedures, by promulgating and implementing 18 N.Y.C.R.R. § 505.2(l), which denies those required services to categorically needy Medicaid recipients with GID in New York State.

## REQUEST FOR RELIEF

68. WHEREFORE, Plaintiff respectfully requests that this Court:

    a. Issue a permanent injunction ordering:

        i. Defendants Daines and Doar to provide Plaintiff with medical assistance coverage for all care, services, drugs and supplies prescribed by her physicians for the purpose of gender reassignment to treat her gender identity disorder;

        ii. Defendant Daines to rescind 18 N.Y.C.R.R. § 505.2(l)

        iii. Defendant Daines to issue an Informational Letter ("INF") informing local social services districts that 18 N.Y.C.R.R. § 505.2(l) is no longer in effect.

    b. Enter a judgment declaring that:

        i. Defendants have violated and are violating Plaintiff's rights under 42 U.S.C. § 1396a(a)(10)(A) and its implementing regulation 42 C.F.R. § 440.210, by promulgating and implementing 18 N.Y.C.R.R. § 505.2(l), thereby failing to provide medical assistance coverage for

    certain required services that are medically necessary for the treatment of Plaintiff's medical condition;

ii. Defendants have violated and are violating Plaintiff's rights under 42 U.S.C. § 1396a(a)(10)(B)(i) and its implementing regulation 42 C.F.R. § 440.240(b), by promulgating and implementing 18 N.Y.C.R.R. § 505.2(l), thereby denying Plaintiff, a categorically needy Medicaid recipient, medical assistance that is provided to other categorically needy Medicaid recipients;

iii. Defendants have violated and are violating Plaintiff's rights under 42 U.S.C. § 1396a(a)(17) and its implementing regulation 42 C.F.R. § 440.230(c), by promulgating and implementing 18 N.Y.C.R.R. § 505.2(l), thereby denying Plaintiff medical assistance coverage of care, services, drugs and supplies prescribed by her physicians for the purpose of gender reassignment solely on the basis of her GID diagnosis;

iv. Defendants have denied and are denying Plaintiff equal protection of the law in violation of the equal Protection clauses of the Fourteenth Amendment to the United States Constitution and New York State Constitution by, with no rational basis, denying care, services drugs, and/or supplies prescribed for the purpose of gender reassignment to treat Plaintiff, a categorically needy Medicaid recipient with gender identity disorder, while providing the same care, services, drugs or

       supplies to other Medicaid recipients suffering from illnesses other than GID;

   v. Defendants have violated and are violating Plaintiff's rights under New York Social Services Law §365-a by promulgating and implementing 18 N.Y.C.R.R. § 505.2(l), which denies care, services, drugs and supplies prescribed by physicians for the purpose of gender reassignment to treat categorically needy Medicaid recipients with gender identity disorder in New York State.

  c. Award Plaintiff costs and disbursements, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988;

  d. Award Plaintiff such other and further relief as the Court may deem just and proper.

Dated:   May 24, 2007
           New York, New York

                              Respectfully submitted,

                              _____
                              YISROEL SCHULMAN, ESQ
                              NEW YORK LEGAL ASSISTANCE GROUP
                              Jane Greengold Stevens, Of Counsel (JS 4790)
                              Caroline Hickey, Of Counsel (CH 1410)
                              Deborah Berkman, Of Counsel (DB 8086)
                              450 West 33rd Street, 11th Floor
                              New York, New York 10001
                              Tel. (212) 613-5000, Ext. 5031, 5077, 5069

SYLVIA RIVERA LAW PROJECT
Pooja Gehi (PG 4718)
322 Eighth Avenue, 3rd Floor
New York, New York 10001
Tel. (212) 337-8550
Fax (212) 337-1972


ORRICK, HERRINGTON & SUTCLIFFE LLP
Morton Dubin (MD 7149)
666 Fifth Avenue
New York, New York 10103
(212) 506-5000 (telephone)
(212) 506-5151 (facsimile)