UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
TERRI CASILLAS,

                    Plaintiff,                      07-CV-4082 (PKC)

      -against-

RICHARD F. DAINES, as Commissioner of the
New York State Department of Health, and
ROBERT DOAR,  as Commissioner of the
New York City Human Resources Administration,

                    Defendants.
-------------------------------------------------------------X

### STATE DEFENDANT'S MEMORANDUM
### IN SUPPORT OF ITS MOTION FOR A
### JUDGMENT ON THE PLEADINGS

#### Preliminary Statement

This memorandum of law is respectfully submitted on behalf of defendant, Richard F.

Daines, as Commissioner of the New York State Department of Health ("DOH" or "State

defendant") in support of his motion pursuant to Federal Rule of Civil Procedure 12(c), on the

grounds that the plaintiff does not have an implied private right of action to bring her claims

against State defendant (nor does she have a private right of action which is enforceable pursuant

to Section 1983) and the promulgation and implementation of the regulation at issue in this

action does not violate plaintiff's rights under the Federal Medicaid statute nor does it violate her

equal protection rights provided by the Fourteenth Amendment of the U.S. Constitution.

#### Statement of Facts

#### Statutory and Regulatory Background

Medicaid is a cooperative federal-state program through which the Federal Government

provides financial assistance to states so that they may furnish medical care to needy individuals.

<u>Wilder v. Virginia Hosp. Ass'n</u>, 496 U.S. 498, 502 (1990). The Medicaid program, Title XIX of the Social Security Act, was created in 1965 and "provides a federal subsidy to states that choose to reimburse poor individuals for certain medical care." <u>Westside Mothers v. Haveman</u>, 289 F.3d 852, 855 (6th Cir. 2002). "Although participation in the program is voluntary, participating states must comply with certain requirements imposed by the Act and regulations promulgated by the Secretary of Health and Human Services." <u>Wilder</u>, 496 U.S. at 502. States participate in the program through State plans for medical assistance that are submitted to and approved by the Secretary of Health and Human Services ("HHS"). 42 U.S.C. 1396; <u>see</u> <u>also</u> 42 C.F.R. § 430.10. Once the plan is approved, the federal government reimburses the state for a percentage of the state's payments made for the medical care of the indigent. A state that fails to comply with its approved medical assistance plan and certain federal requirements runs the risk of having the Secretary revoke its funding. 42 U.S.C. 1396c.

There are two classes of eligible Medicaid recipients: the "categorically needy" and the "medically needy." 42 C.F.R. 435.1(b). The categorically needy are individuals who are eligible for cash assistance under Aid to Families with Dependent Children program ("AFDC") or the Social Security Income program ("SSI") for people who have reached the age of 65 or who are blind or disabled. <u>Camacho v. Perales</u>, 786 F.2d 32, 33 (2nd Cir. 1986). The medically needy are individuals who meet the nonfinancial eligibility requirements for cash assistance under AFDC or SSI and have income or resources that exceed the financial eligibility standards of the relevant program but are considered insufficient to pay for necessary medical care. <u>Id.</u> In a state that elects to provide medical assistance to a medically needy person, he/she is eligible for Medicaid, if during a given period, he/she incurs medical expenses in an amount equal to or greater than the

amount by which his/her income exceeds the applicable standard. Id.

42 U.S.C. § 1396a(a)(10)(A) requires that a state plan for medical assistance must provide for making medical assistance available to categorically needy individuals, including at least the care and services listed in 42 U.S.C. § 1396d(a)(1)-(5), (17) and (21), which are, inpatient hospital services, outpatient hospital services, other laboratory and X-ray services, physicians services, services furnished by a nurse-midwife and services furnished by a certified pediatric nurse practitioner or certified family nurse practitioner.

An implementing federal regulation, 42 C.F.R. 440.210, states that the state plan must specify that, at a minimum, the categorically needy are furnished with the services defined in 42 C.F.R. §§ 440.10 through 440.50 and 42 C.F.R. § 440.70.  These services include inpatient hospital services, outpatient hospital services, x-ray and other laboratory services and physicians' services.

42 U.S.C. 1396a(a)(10)(B) states:

> that the medical assistance made available to any individual
> described in subparagraph (A) - -
> (i) shall not be less in amount, duration, or scope than the medical
> assistance made available to any other such individual, and
> (ii) shall not be less in amount, duration, or scope than the medical
> assistance made available to individuals not described in paragraph
> (A).

42 U.S.C. 1396a(10)(B).

42 C.F.R. 440.240 provides that:

> (a) The [state] plan must provide that the services available to any
> categorically needy recipient under the plan are not less in amount,
> duration, and scope than those services available to a medically
> needy recipient; and
> (b) The [state] plan must provide that the services available to any
> individual in the following groups are equal in amount, duration,

and scope for all recipients within the group:
(1) The categorically needy.
(2) A covered medically needy group.

42 C.F.R. 440.240.

42 C.F.R. 440.230 specifies that:

(a) The [state] plan must specify the amount, duration, and scope
of each service that it provides for–
(1) The categorically needy; and
(2) Each covered group of medically needy.
(b) each service must be sufficient in amount, duration, and scope
to reasonably achieve its purpose.
(c) The Medicaid agency may not arbitrarily deny or reduce the
amount, duration, or scope of a required service under §§ 440.210
and 440.220 to an otherwise eligible recipient solely because of the
diagnosis, type of illness, or condition.
(d) The agency may place appropriate limits on a service based on
such criteria as medical necessity or on utilization control
procedures.

42 C.F.R. 440.230.

42 U.S.C. 1396a(17) provides that:

A State plan for medical assistance must . . . include reasonable
standards . . . for determining eligibility for and the extent of
medical assistance which . . . are consistent with the objectives of
this [Act].

42 U.S.C. 1396a(17).

The State defendant's general authority for administration of New York State's Medicaid

program is found in Title 11 of Article 5 of the New York Social Services Law ("S.S.L.")with

the DOH acting as the single state agency. The State defendant is authorized to promulgate

regulations in the implementation and administration of the Medicaid program. S.S.L. § 363-

1(2). The State defendant is authorized to promulgate regulations for the determination of the

amount, nature and manner of providing services under the Medicaid program. See S.S.L. §§

4

365-a(1) and (2).

## Allegations of the Complaint

By this action, plaintiff challenges DOH's promulgation and implementation of 18

N.Y.C.R.R. 505.2(l) which provides:

> Payment is not available for the care, services,
> drugs, or supplies rendered for the purpose of
> gender reassignment (also known as transsexual
> surgery) or any care, services, drugs or supplies
> intended to promote such treatment.

18 N.Y.C.R.R. 505.2(l). See Complaint, ¶¶ 63, 64, 65, 66 and 67.

Plaintiff contends that 18 N.Y.C.R.R. § 505.2(1) violates the Equal Protection Clause of

the 14th Amendment of the U.S. Constitution and various provisions of the federal Medicaid Act

and its implementing regulations. Specifically, plaintiff alleges that the promulgation and

implementation of 18 N.Y.C.R.R. § 505.2(l) violates 42 U.S.C. § 1396a(10)(A), 42 U.S.C. §

1396a(a)(10)(B)(i),  42 U.S.C. § 1396a(a)(17) and their implementing regulations, 42 C.F.R. §

440.240(b), 42 C.F.R. § 440.210, and 42 C.F.R. § 440.230(c). Complaint, ¶¶ 1, 63, 64, 65 and

66.[1]

---

[1] By order dated October 29, 2007, this Court granted plaintiff's application to dismiss all
state law claims asserted against State defendant without prejudice.

**POINT I**

**NEITHER THE FEDERAL STATUTORY PROVISIONS
NOR THE REGULATIONS UPON WHICH
PLAINTIFF RELIES CREATE AN ENFORCEABLE
RIGHT TO THE CARE, SERVICES, DRUGS OR SUPPLIES
REQUIRED FOR GENDER REASSIGNMENT**

**A.    The Statutes Which Plaintiff Relies Upon Do Not Create An Implied Right of Action
Against State Defendant**

Plaintiff has brought this action, in part, pursuant to certain sections of the federal

Medicaid statute,  42 U.S.C. 1396a, et seq. and their implementing regulations.  Complaint ¶ 1.

Plaintiff did not bring this action pursuant to Section 1983.  However, neither the federal

Medicaid statutes nor regulations cited by plaintiff create an implied right of action to the care,

services, drugs or supplies required for gender reassignment surgery nor would there be an

enforceable right to such treatment pursuant to Section 1983.

The Supreme Court in Cort v. Ash, 422 U.S. 66, 78 (1975) established a four-prong test

to determine whether a federal statute provides an implied private right of action: 1) is the

plaintiff one of the class for whose especial benefit the statute was enacted . . . that is, does the

statute create a federal right in favor of plaintiff; 2) is there any indication of legislative intent,

explicit or implicit, either to create such a remedy or to deny one; 3) is it consistent with the

underlying purposes of the legislative scheme to imply such a remedy for the plaintiff; and 4) is

the cause of action one traditionally relegated to state law, in an area basically concern of the

states, so that it would be inappropriate to infer a cause of action based solely on federal law.

Cort v. Ash, 422 U.S. at 78 (internal citations omitted).

In Gonzaga Univ. v. Doe, 536 U.S. 273 (2002) ("Gonzaga"), the Supreme Court clarified

the criteria courts must consider when evaluating whether an individual may sue to enforce a

statutory provision under 42 U.S.C. § 1983 or directly under a statute through an implied private right of action.  There, the Court held that a student had no right to sue a university for damages under § 1983 to enforce provisions of the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. §1232g, which prohibited the Secretary of Education from granting federal funding to educational institutions that had a policy or practice of releasing individual educational records without authorization.  Gonzaga, 536 U.S. at 277.

The Court granted certiorari in Gonzaga, in part, to "resolve any ambiguity" in its prior opinions concerning when federal statutory provisions may be enforced under 42 U.S.C. §1983. Id.  The Court had previously set forth, in Blessing v. Freestone, 520 U.S. 329 (1997), what it characterized in Gonzaga as three factors to guide judicial inquiry into whether or not a statute confers a right to bring suit: (1) Congress must have intended that the provision in question benefit the plaintiff; (2) the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial resources; and (3) the provision giving rise to the asserted right "must be couched in mandatory, rather than precatory, terms."  Gonzaga, 536 U.S. at 282-83 (citing Blessing v. Freestone, 520 U.S. at 340-41).  The Gonzaga Court noted that Blessing underlined that "only violations of rights, not laws . . . give rise to §1983 actions," but that confusing language had "led some courts to interpret Blessing as allowing plaintiffs to enforce a statute under § 1983 so long as the plaintiff falls within the general zone of interest that the statute is intended to protect."  Id., 536 U.S. at 282-83.  The Gonzaga Court clarified that a plaintiff must have "an unambiguously conferred right" under a statute in order to support a cause of action under § 1983, and that "it is rights, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of that

7

section." Id.

The determination of whether a statute confers rights enforceable under Section 1983 overlaps with the determination of whether a private right of action can be implied from a particular statute in one meaningful manner - - in either case there must first be a determination of whether Congress intended to create a federal right. Gonzaga v. John Doe, 536 U.S. at 283. Generally, in order to make this determination, courts must look to whether the statutory terms grant "private rights" to an "identifiable class" of beneficiaries (id. (citations omitted)), and whether the terms of the statute are "phrased in terms of the persons benefitted." Id. (citations omitted). The Court must look at the statute's structure as well as its text:  "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." Id. at 286.

However, in order to determine if an implied private right of action exists in a particular statute there must be a determination of "whether Congress intended to create the private remedy asserted for the violation of statutory rights." Wilder v. Virginia Hospital Association, 496 U.S. at 509 (citations omitted).  This inquiry is different than, for example, what is involved in determining whether a statutory violation may be enforced through Section 1983 in that a plaintiff suing under Section 1983 does not have the burden of showing an intent to create a private remedy because Section 1983 generally supplies a remedy for the vindication of rights secured by federal statutes. Id.; Gonzaga v. John Doe, 536 U.S. at 283-284.

Federal spending power legislation generally may not be individually enforced in court. See Gonzaga at 280.  This is because "the typical remedy" for non-compliance with conditions

imposed in federal spending legislation "is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." Id. (quoting <u>Maine v. Thiboutot</u>, 448 U.S. 1, 28 (1980)).  Therefore, "unless Congress 'speaks with a clear voice,' and manifests an 'unambiguous' intent to confer individual rights, federal funding provisions provide no basis for private enforcement by § 1983." Id. (quoting <u>Thiboutot</u>, 448 U.S. at 17, 28, & n.21)

### 1.    Generally, There Is No Implied Right of Action Under Medicaid Act

Plaintiff brings this action not pursuant to Section 1983 but pursuant to the Medicaid Act. However, courts dealing with this issue have consistently and persuasively held that there is no implied right of action under the Medicaid act.  For instance, in <u>Chalfin v. Beverly Enterprises, Inc.</u>, 741 F.Supp 1162, 1168-69 (E.D. Penn 1989), the Court applied the <u>Cort v. Ash</u> four-prong test and determined that there was no evidence that Congress intended to provide for a private right of action under the Social Security Act reasoning, in part, that a "review of the legislation under the second and third *Cort* factors, compels [the Court] to conclude that a private right of action may not be implied under the Act because is it clear that Congress did not intend to include a private right of action as part of the legislative scheme." <u>Chalfin v. Beverly Enterprises, Inc.</u>, 741 F.Supp at 1169.  In holding that a private right of action could not be implied in the Medicaid Act, the Court in <u>Chalfin</u> continued to state:

> It is clear from the legislative history that, rather than focusing on the individual patient, the legislation is primarily directed at the role of participating *states* in providing medical care with the assistance of federal funds. The bill attempts to outline certain requirements which the *state* must comply with in order to become and remain eligible for federal funding. It is clear that the Medicaid program in not intended to meet all the medical needs of recipients. Rather its goal is to provide medical assistance as far as practicable under the conditions of each state.

9

Id. at 1169 (internal citations omitted).

In applying the Cort factors and finding that the Medicaid Act does not create an implied right of action, the Court in Solter v. Health Partners of Philadelphia, 215 F.Supp.2d 533, 539 (E.D. Penn. 2002) similarly reasoned:

> One, it does not necessarily follow that where a federal statute affords substantive rights, but does not explicitly provide a remedy to afford those rights, Congress necessarily intended that such a remedy would be available. While a silent legislative history does not necessarily preclude the existence of an implied remedy, neither does congressional silence create a presumption in favor of judicial remedy. Two, the Medicaid Act actually mandates that the participating states create a voluntary administrative process whereby beneficiaries may seek redress for an allegedly wrongful withholding of benefits. . . . In other words, there is a remedy available to plaintiffs for the wrong they allege in a state-created forum, rather than in federal court.

215. F.Supp.2d at 539 (internal citations omitted); see also People v. First of Tennessee v. Arlington Developmental Center, 878 F.Supp. 97, 100 (W.D. Tenn. 1992)(no private right of action under Medicaid outside 42 U.S.C. 1983).

Therefore, because there is no implied right of action under the Medicaid Act, this complaint must be dismissed as against State defendant.

## 2. Analysis of the Specific Statutory Provisions Applicable Here Do Not Create a Private Right of Action for the Care, Services, Drugs or Supplies for Gender Reassignment Surgery

In any event, an analysis using the standards set forth in Cort and Gonzaga, demonstrates the there is no implied private right of action pursuant to each statutory provision which is applicable in this matter nor would there be a private right of action pursuant to Section 1983.

a.    **42 U.S.C. 1396a(a)(10)(A) and (B) Do Not Create an Entitlement or a Private Right of Action for the Care Services, Drugs or Supplies for Gender Reassignment Surgery**

42 U.S.C. § 1396a(a)(10)(A) requires that a state plan for medical assistance must provide for making medical assistance available to categorically needy individuals, including at least the care and services listed in 42 U.S.C. § 1396d(a)(1)-(5), (17) and (21) (inpatient hospital services, outpatient hospital services, other laboratory and X-ray services, physicians services, services furnished by a nurse-midwife and services furnished by a certified pediatric nurse practitioner or certified family nurse practitioner).   42 U.S.C. 1396a(a)(10)(B) states:

> that the medical assistance made available to any individual described in subparagraph (A) - -
> (i) shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual, and
> (ii) shall not be less in amount, duration, or scope than the medical assistance made available to individuals not described in paragraph (A).

42 U.S.C. 1396a(a)(10)(B).

These provisions do not unambiguously confer rights to any particular and specific service - - let alone to the care, services, drugs or supplies necessary for gender reassignment surgery.  Nor does it confer rights to  to any particular individual or group of individuals. Clearly, the intent of the section is generally to set forth what must be included in the State plan to obtain federal approval.  There is no language in 42 U.S.C. § 1396d(a)(1)(10)(A) which evidences any intent, much less an unambiguous one, to confer a right on a particular individual. These statutory terms plainly do not grant "private rights" to an "identifiable class" of beneficiaries, nor are they "phrased in terms of the persons benefitted." Gonzaga, 536 U.S. at 282-83. Instead,  this language is addressed to the participating state agency which is being

11

regulated, i.e., the New York State Department of Health.  The remedy for the State defendant's alleged non-compliance with the conditions imposed in this federal spending legislation "is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." Gonzaga, 536 U.S. at 280; see also Pennhurst State Sch. & Hosp.v. Halderman, 451 U.S. 1, 28 (1980).

Moreover, although 42 U.S.C. 1396a(1)(10)(A) sets forth the broad categories of required medical treatment, there is nothing in the federal Medicaid statute which suggests that a state which chooses to participate in the Medicaid program is required to fund every medical procedure that falls within the delineated categories of medical care.  See Beal v Doe, 432 U.S. 438, 441 (1977)(Title XIX does not require states to provide funding for all medical treatment falling within the five general categories). Therefore,  42 U.S.C. 1396a(10)(A) does not create an enforceable right to any particular service including the care, services, drugs, or supplies required to treat gender reassignment. Id.

In any event, even assuming arguendo that this Court determines, as other courts have (see Watson v. Weeks, 436 F.3d 1152 (9th Cir. 2006)(holding that 1396a(a)(10) creates a private right enforceable under 1983 because it requires states to provide particularly specified benefits to particularly specified types of individuals and because there was no evidence that Congress intended to preclude reliance on 1983 as a remedy), that these sections of the Medicaid statute do in fact manifest an intent to confer rights on a particular individual or group of individuals, there is still no basis for an implied right of action against State defendant under the factors set forth in Cort v. Ash and the subsequent line of cases.

For example, there is no indication that Congress intended for these provisions to provide

12

a remedy to plaintiffs outside the administrative appeals process that each state is required to

establish as part of their Medicaid program. See Solter v. Health Partners of Philadelphia, 215

F.Supp.2d at 539 (holding that it does not necessarily follow that where a federal statute affords

substantive rights such a remedy would be available and that the administrative process which is

created as part of a state's Medicaid program provides a remedy available to plaintiffs for the

wrong they allege in a state-created forum rather than in federal court).  Moreover, the health and

welfare of individuals is an area of legislation traditionally entrusted to the states (see Sparr v.

Berks County, 2002 U.S. Dist. LEXIS 13204 (2002)) and the distribution of the limited public

assistance funds is an area that is usually left to the state officials charged with that

responsibility. See Dandrige v. Williams, 397 U.S. 471, 485 (1970).

    Therefore, 1396a(a)(10)(A) and (B) do not create an implied right of action.


    **b.**     **42 U.S.C. 1396a(a)(10)(17) Does Not Create a Private Right of
           Action Against State Defendant**

42 U.S.C. 1396a(17) provides that:

>    A State plan for medical assistance must . . . include reasonable
>    standards . . . for determining eligibility for and the extent of
>    medical assistance which . . . are consistent with the objectives of
>    this [Act].

42 U.S.C. 1396a(17).

    The language of this provision does not manifest a unambiguous intent to confer rights

on a particular individual or group.  As the ninth Circuit aptly stated in Watson v. Weeks:

"[t]here is insufficient evidence of congressional intent to create a section 1983 right under this

provision. Section 1396a(a)(17) is a general discretion-granting requirement that a state adopt

reasonable standards. It fails to provide an "unambiguously conferred right" and fails the first

13

prong of <u>Gonzaga</u>. The key wording of section 1396a(a)(17) fails to even mention individuals or persons. <u>Watson v. Weeks</u>, 436 F.3rd at 1162.  Moreover, this section places a focus on the state's standards and their aggregate impact as opposed to the benefits to individuals.  <u>Id.</u>

Therefore, because 42 U.S.C. 1396a(a)(17) does not create an unambiguously conferred right to any individual, it fails to provide a right, enforceable as an implied right of action or pursuant to 1983, and therefore this claim must be dismissed as against State defendant.

**B.**     **The Regulations Upon Which Plaintiff Relies Do Not Give Rise To A Privately Enforceable Federal Right**

In support of her contentions, plaintiff principally relies on 42 C.F.R. §§ 440.210, 440.240(b) and 440.230(c).  <u>See</u> Complaint, ¶¶ 63, 64 and 65.   Plaintiff's reliance on these regulations is misplaced because they do not confer an enforceable federal right.

The issue of whether a regulation, standing alone, is privately enforceable apparently remains open in this circuit.  <u>See</u> <u>D.D. ex rel V.D. v. New York City Bd. of Educ.</u>, 465 F.3d 503, 513 (2d Cir. 2006) ("<u>DD</u>"); <u>See</u> <u>also</u> <u>King v. Town of Hempstead</u>, 161 F.3d 112, 114 (2d Cir. 1998).  However, the majority of circuits have determined that where a regulation's enforcing statute confers no federal right the regulation alone cannot create a right which is enforceable. <u>D.D.</u>, 465 F.3d at 513.  It has been held that:

> if the regulation defines the content of a statutory provision that creates no federal right under the three-prong test, or if the regulation goes beyond explicating the specific content of the statutory provision and imposes distinct obligations in order to further the broad objectives underlying the statutory provision ... , the regulation is too far removed from Congressional intent to constitute a "federal right" enforceable under § 1983.

<u>Harris v. James</u>, 127 F.3d 993, 1009 (11th Cir. 1997).

As aptly stated:

> Not every rule creates a right.  Upon analysis, this Court concludes

> that § 1983 does not authorize indiscriminate private enforcement of the vast universe of federal regulations but extends such enforcement only to those regulations that further define the substance of a statutory (or constitutional) provision that itself creates an enforceable right. In this Court's view, no other result is consonant with the separation of powers, for if Congress intended that only certain specific provisions give rise to private enforcement actions under § 1983, it cannot have intended that private actions be predicated on administrative regulations not closely connected to these statutory sources of private power.

Graus v. Kaladjian, 2 F. Supp. 2d 540, 543 (S.D.N.Y. 1998)(citations omitted).

The applicable statutory sections do not create an enforceable right and neither do the regulations cited by plaintiffs.

## POINT II

### THE STATE REGULATION CONSTITUTES A REASONABLE CONSTRUCTION OF THE FEDERAL MEDICAID STATUTE AND MUST BE AFFORDED SUBSTANTIAL DEFERENCE

The Medicaid statute is silent on the issue of coverage for the care, services, drugs or supplies for the purpose of gender reassignment. Therefore, assuming arguendo that this Court finds that there is an implied private right of action under the cited sections of the Medicaid statute, this Court must give substantial deference to DOH's interpretation of the Medicaid statute so long as its interpretation is based on a permissible construction of the statute. See Perry v. Dowling, 95 F.3d 231, 235-6 (2nd Cir. 1996), citing Cheveron USA, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843; see also Carroll v. DeBuono, 998 F. Supp. 190, 195 (N.D.N.Y. 1998)

As noted in Cheveron, in determining whether DOH's interpretation of the Medicaid statute is permissible, the "Court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court

would have reached if the question initially had arisen in a judicial proceeding." <u>Cheveron</u>, 467 U.S. at 843, n. 11. "Rather, a permissible construction of the statute is one that reflects a plausible construction of the plain language of the statute and does not otherwise conflict with Congress' expressed intent." <u>Carroll v. DeBuono</u>, 998 F.Supp. at 195 (<u>citing</u> <u>Perry v. Dowling</u>, 95 F.3d at 236 (internal quotations omitted).   The Court "may not substitute its own construction of a statutory provision for a reasonable interpretation made by [an] agency." <u>Cheveron</u>, 467 U.S at 844.  Moreover, the "construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong." <u>Beal v. Doe</u>, 432 U.S. at 447 (internal citations omitted).

These principles of deference are applicable to the promulgation of a state regulation under the Medicaid program, as the state Medicaid plans and their implementation require the approval of HHS and thus involves the federal government. <u>See</u> <u>Perry v. Dowling</u>, 95 F.3d at 236; <u>see also</u> <u>Carroll v. DeBuono</u>, 998 F.Supp. at 195.  Here, as will be demonstrated, 18 NYCRR 505.2(1) does not conflict with any of the provisions of the federal Medicaid act nor are there compelling indications that it is a incorrect interpretation of the federal Medicaid act.[2]

_____

[2] In fact, many states expressly exclude these procedures as a covered service under their Medicaid program. These states include: Alaska (Department of Health and Social Services will not pay for a medical expense that is "for treatment, therapy, surgery or other procedures related to gender reassignment... ." 7 Alaska Admin. Code (11));  Arizona ("gender reassignment surgeries" are "excluded from [] coverage."  Arizona Admin. Code R9-22-205(B)(4)(a); Colorado (funding provided under the Colorado Medicaid program shall not be used for providing discounted health care services for sex change surgical procedures. 10 CCR 2505-10); Connecticut (The Department shall not pay for "transsexual surgery or for a procedure which is performed as part of the process of preparing an individual for transsexual surgery, such as hormone therapy and electrolysis" nor shall it pay for psychiatric services in preparing an individual for transsexual surgery." Regs., Conn. State Agencies 17b-262-442(a) and 17b-262-456(c)(4));  Hawaii (Medicaid program will not pay for "sex change operations." WCHR 17-1722-66(8)); Illinois (Medicaid program will not pay for "medical or surgical transsexual

Therefore, 18 NYCRR 505.2(1), for the reasons stated below, must be upheld as a valid

construction of the federal Medicaid Act and the portions of the Complaint which allege

otherwise must be dismissed.

### A.    18 N.Y.C.R.R. 505.2(1) Does Not Violate 42 U.S.C. 1396a(a)(10)(A) or 42 C.F.R. 440.210

Plaintiff argues that 18 N.Y.C.R.R. § 505.2(l) violates her rights pursuant to 42 U.S.C. §

1396a(a)(10)(A) and its implementing regulation, 42 C.F.R. § 440.210, by refusing to provide

required Medicaid services to Plaintiff, a categorically needy Medicaid recipient. Complaint, ¶

63.  However, because 18 N.Y.C.R.R. § 505.2(l) does not conflict with the requirements of 42

U.S.C. § 1396a(a)(10)(A) or 42 C.F.R. § 440.210 and because it is a plausible construction of the

Medicaid statute, plaintiff's arguments must fail.

42 U.S.C. § 1396a(a)(10)(A) requires that a state plan for medical assistance must

provide for making medical assistance available to qualified individuals, including at least the

---

treatment." 89 Ill. Adm. Code 140.6(1)); Iowa (Medicaid program excludes "procedures related to transsexualism, hermaphroditism, gender identity disorders, or body dysmorphic disorders." 441 Iowa Admin. Code r. 78.1(4)(b)(2)); Massachusetts (State program will not pay for "sex-reassignment surgery or hormone therapy. 114.6 CMR 10.02, 12.02, 13.02.14.02); Missouri (Medicaid plan does not provide for transsexual surgery or hormonal support. 22 CSR 10-2.060(46)); Nebraska (Medicaid does not cover "sex change procedures"); New Hampshire (Medicaid program does not cover "experimental or investigational procedures . . . including . . . sex change operations." N.H. Admin. Rules, He-W 530.05(4)); Oregon (Medicaid will not pay for "transsexual surgery or any related services or items." Or. Admin. R. 410-120-1200(2)(z)); Tennessee (Medicaid program excludes "transsexual surgery." Tenn. Comp. R. & regs. R. 1200-13-13.10((b)(82)); Wisconsin (Medicaid does not cover drugs, including hormone therapy, associated with transsexual surgery or medically unnecessary alteration of sexual anatomy or characteristics nor does it cover transsexual surgery. Wis. Adm. Code HFS 107.03(23) and (24)); and Wyoming (Medicaid does not cover transsexual surgery. WCWR 048-130-026 Section 6 (xix)).

 Notably, no state expressly includes this type of procedure in its Medicaid program.
 Moreover, the Federal Medicare program specifically excludes transsexual surgery from coverage. See Medicare Coverage Issues Manual, Transmittal 142, § 35-61 (2001).

care and services listed in 42 U.S.C. § 1396d(a)(1)-(5), (17) and (21), which are, inpatient

hospital services, outpatient hospital services, other laboratory and X-ray services, physicians

services, services furnished by a nurse-midwife and services furnished by a certified pediatric

nurse practitioner or certified family nurse practitioner.

Although 42 U.S.C. 1396a(a)(10)(A) sets forth the broad categories of required medical

treatment, there is nothing in the federal Medicaid statute which suggests that a state which

chooses to participate in the Medicaid program is required to fund every medical procedure that

falls within the delineated categories of medical care. Beal v. Doe, 432 U.S. at 444.  In fact, the

Medicaid statute uses language which specifically confers broad discretion on the states to adopt

standards for determining the extent of medical assistance (id.) by providing that:

> A State plan for medical assistance must . . . include reasonable
> standards . . . for determining eligibility for and the extent of
> medical assistance which . . . are consistent with the objectives of
> this [Act].

42 U.S.C. 1396a(17); See also Beal v. Doe, 432 U.S. at 444.

Therefore, states that participate in the Medicaid program, such as New York State, have

broad discretion in determining whether or not to provide medical assistance coverage for the

care, services, drugs, or supplies for the purpose of gender reassignment, a category of care that

is not specifically set forth in the required categories of medical care.

As indicated in the notice which was published as part of the rule making process before

18 N.Y.C.R.R. 505.2(l) was promulgated, State defendant had a rational basis in proposing the

regulation:

> Consistent with the legislature's objective of providing high-
> quality medical assistance services to MA recipients, the
> Department [of Health] has the responsibility both of allocating

> available resources and of assuring that services available to MA
> recipients are safe and effective. Where as here treatments have not
> been proven to be safe and effective over the long term, the
> treatment must be eliminated from the list of available medical
> assistance services.

Rule Making Activities, NYS Register, July 16, 1997 at 26.

Moreover, there was a comment period before 18 N.Y.C.R.R. 505.2(l) was promulgated

in which comments were accepted and reviewed and the State defendant determined that:

> The department [of health] received comments from two
> physicians opposing our proposal to deny payment for care,
> services, drugs or supplies rendered for the purpose of gender
> reassignment. Both physicians suggested that gender reassignment is an
> appropriate, effective and safe treatment for persons with gender
> dysphoria. However, there are equally compelling arguments indicating
> that gender reassignment, involving ablation of normal organs for which
> there is no medical necessity because of underlying disease or pathology
> in the organ, remains an experimental treatment, associated with serious
> complications. In addition to questions regarding the safety and
> effectiveness of the surgical procedures themselves, there are serious
> questions about the long-term safety of administering testosterone and
> estrogen at therapeutic levels, required for the remainder of the life of the
> person who undergoes gender reassignment. Based on these factors, the
> department intends to move forward with this proposed regulation.

12 N.Y. St. Reg. 5, 8 (1998).

In addition, as reflected in the State Register in 2003 in discussing the continuation of 18

N.Y.C.R.R. 505.2(l) the State defendant determined that:

> [The regulation] is consistent with the Legislature's objective of
> providing high-quality medical assistance services to recipients
> under the Medicaid program. The Department [of Health] has the
> responsibility of allocating available resources and assuring that
> services available are safe and effective. These treatments have not
> been proven to be safe and effective over the long term, and
> therefore have been eliminated from the list of covered services
> under the Medicaid program.

12 N.Y. St. Reg. 100, 103 (2003).

19

Certainly, then, State defendant had rational justifications for its determination not to provide medical assistance coverage for the care, services, drugs, or supplies for the purpose of gender reassignment and therefore acted well within its discretion when it promulgated and implemented 12 N.Y.C.R.R. 505.2(l).  Moreover, 12 N.Y.C.R.R. 505.2(l) does not conflict in any manner with 42 U.S.C. 1396a(a)(10)(A) or 42 C.F.R. 440.210  therefore it is a valid interpretation of the federal Medicaid statute and these claims against State defendant must fail.

**B.    18 N.Y.C.R.R. 505.2(1) Does Not Violate 42 U.S.C. 1396a(a)(10)(B)(i) or 42 C.F.R. 440.240(b)**

Plaintiff claims that the promulgation and implementation of 18 NYCRR 505.2(1) also violates 42 U.S.C. 1396a(10)(B)(i) and its implementing regulation, 42 C.F.R. 440.240(b). See Complaint, ¶ 64. However, for the following reasons plaintiff's argument simply fails.

The purpose of 42 U.S.C. 1396a(a)(10)(B) and 42 C.F.R. 240(b) is to guarantee that if a state elects to provide medical assistance to the medically needy, it must also provide it to the categorically needy and it may not provide more assistance to the former group than to the latter. Rodriguez v.  City of New York, 197 F.3d 611, 615 (2nd Cir. 1999).   In addition, "states may not provide benefits to some categorically needy individuals but not to others." Id.  citing 42 U.S.C. 1396a(a)(10)(B)(i); Schweiker v. Hogan, 457 U.S. 569, 573 n.6 [] (1982)(stating that Section 1396a(a)(10)(B) ensures that "the medical assistance afforded to an individual who qualified under any categorical assistance program could not be different from that afforded to an individual who qualified for any other program"); and Sobky v. Smoley, 855 F.Supp. 1123, 1140 (E.D. Cal. 1994)(the current text of the statute requires comparability between groups of the categorically needy as well as between individuals within the same group).  Therefore, this section of the Medicaid statute and its implementing regulation prevent states from

20

discriminating against or among the categorically needy. Id.

Plaintiff, allegedly a categorically needy Medicaid recipient (Complaint, ¶¶ 5 and 63), makes the assertion that by promulgating and implementing 18 N.Y.C.R.R. 505.2(l) State defendant has violated the comparability statute and regulation, 42 U.S.C. 1396a(a)(10)(B)(i) and 42 C.F.R. 440.240(b), respectively, by making available medical assistance to plaintiff that is less in amount duration, and scope than the medical assistance made available to other categorically needy Medicaid recipients. See Complaint, ¶ 64.

However, plaintiff's argument is unsupported and misplaced.  Nowhere in the Complaint does plaintiff demonstrate or allege that State defendant provides medical assistance coverage for the care, services, drugs or supplies for the purpose of  gender reassignment to the medically needy but not to the categorically needy or that it provides such coverage for some categorically needy individuals but not to others.

Moreover, to the extent that the plaintiff claims that State defendant's policy of providing medical assistance coverage to other categorically needy individuals for the "construction of artificial vagina (vagina atresia or absence) with or without graft"[3] or "[or]chiectomy, simple

---

[3]    "Vaginal Atresia is a birth defect or Congenital anomaly of the female Genitourinary System that manifests itself in the absence of a vagina (vaginal agenesis), or a deformed and nonfunctional vagina (Vaginal Atresia).
It is frequently associated with Rokitansky-Mayer-Kuster Hauser (RMKH) syndrome, in which the most common result is an absent uterus in conjunction with a deformed or missing vagina, despite the presence of normal ovaries and normal external genitalia.
The situation is most urgent where the normal uterovaginal outflow is obstructed. In this case, prompt medical action is required.
Vaginal atresia is estimated to occur in 1 in 4000-5000 live female births. It is often unnoticed until adolescence, when pain and a lack of menstrual flow indicates the condition. When a doctor diagnoses Vaginal Atresia, there are numerous remedies based on the exact details of the condition. In some cases, surgery can repair the defect or a new vagina can be fabricated using an intestinal graft." Wikipedia, http://en.wikipedia.org/wiki/Vaginal_atresia

unilateral, bilateral" and "amputation of penis, partial complete, radical"[4] (Complaint, ¶ 32) somehow violates these comparability provisions does not prevail. [5]

Even assuming <u>arguendo</u> that "the construction of artificial vagina (vagina atresia or absence) with or without graft" or "[or]chiectomy, simple unilateral, bilateral" and "amputation of penis, partial complete, radical" is comparable to or even included in the care, services, drugs, or supplies which, among other things, are needed for gender reassignment, these surgeries are certainly not the <u>same</u> benefit and 42 U.S.C. 1396a(a)(10)(B)(i) and 42 CFR 440.240(b) does not require State defendant to "fund a benefit that it currently provides to no one." <u>Rodriguez v. City of New York</u>, 197 F.3d at 616. For example, in <u>Rodrguez v. City of New York</u>, the Second Circuit rejected plaintiff's argument that because New York's Medicaid plan covered some personal care services which were very similar to "safety monitoring," the personal care service plaintiffs were seeking, New York's failure to cover safety monitoring violated 1396a(a)(10)(B). The Court in <u>Rodriguez</u> reasoned that 42 U.S.C. 1396a(a)(10)(B) does not require the State to provide a benefit, which it provides to no one, just because it is "comparable" to another benefit which the State does provide.

> A holding to the contrary would both substantially narrow the broad discretion the Medicaid Act confers on the States to adopt standards for determining the extent of medical assistance, and

---

[4] Orchiectomy is commonly known as castration. <u>See</u> Transsexual Road Map, http://www.tsroadmap.com/physical/orchiectomy

[5] Plaintiff misleadingly seems to argue that gender reassignment treatment is simply the "construction of artificial vagina (vaginal atresia or absence) with or without graft" and/or "[or]chiectomy, simple unilateral, bilateral" and "[a]mputation of penis, partial complete, radical" (Complaint, ¶¶ 32, 61, 64, 65, 66), however, even as plaintiff recognizes, the treatment for GID includes the surgery along with hormone therapy, among other things. <u>See</u> Complaint, ¶¶ 39, 57, 58, 59, 60.

> create a disincentive for states to provide services optional under federal law lest a court deem other services "comparable" to those provided - - an elastic concept - - thereby increasing the costs of the optional services. The Act therefore requires only that such standards be reasonable and consistent with the objectives of the Act.

Id.

Therefore, because State defendant's decision to implement 18 NYCRR 505.2(l) does not impermissibly discriminate under 1396a(a)(10)(B) and because State defendant's determination to exclude the care, services, drugs or supplies for the purpose of gender reassignment was reasonable, plaintiff fails to establish a claim against State defendant pursuant to these sections of the federal Medicaid law.  See Rodriguez v. City of New York, 197 F.3d at 616.

   **C.    18 N.Y.C.R.R. 505.2(1) Does Not Violate 42 U.S.C. 1396a(a)(17), 42 C.F.R. 440.230(c), 440.210 or 440.220**

Plaintiff contends that the promulgation and the implementation of 18 N.Y.C.R.R. 505.2(l) violates 42 U.S.C. 1396a(a)(17), 42 U.S.C. 1396a(a)(10)(B)(i) and their implementing regulation, 42 C.F.R. 440.230(c), by arbitrarily denying and reducing the amount, duration and scope of a required service under 42 C.F.R. 440.210 and 42 C.F.R. 440.220 to plaintiff solely because of her diagnosis, type of illness or condition of Gender Identity Disorder ("GID"). Complaint, ¶ 65.  This argument also fails.

In order for plaintiff to prevail on this claim the Court must incorrectly assume first, that the care, services, drugs, or supplies which are needed for the purpose of gender reassignment is a required service.  However, as explained in Point II(A) supra, it is not a required service under the Medicaid program and therefore this argument must fail. See Rodriguez v. City of New York, 197 F.3d at 615.

And, secondly, plaintiff would have to demonstrate that State defendant excludes the care, services, drugs, or supplies which are needed for the purpose of gender reassignment <u>only</u> for those individuals with GID and <u>because</u> those individuals have GID.   However, this is simply not the case.  Even assuming <u>arguendo</u> that only people who have been diagnosed with GID would seek Medicaid coverage for the care, services, drugs, or supplies which are  used for the purpose of  gender reassignment, 18 N.Y.C.R.R. 505.2(l) does not make a distinction between individuals diagnosed with GID or individuals who have not been diagnosed with the disorder.  In other words, the care, services, drugs, or supplies which are used for the purpose of gender reassignment are excluded from coverage for <u>all</u> individuals regardless of their diagnosis. <u>See</u> 18 NYCRR 505.2(l).

Even if, for example, the Court finds that the care, services, drugs or applies which are needed for the purpose of gender reassignment is in fact a required service and that State defendant does in fact provide the same exact benefit to other Medicaid recipients who are not diagnosed with GID, plaintiffs argument still fails.  Here, the reason for the exclusion of the care, services, drugs or supplies for the purpose of gender reassignment has nothing to do with the medical disorder that an individual may suffer from. The rationale to exclude the care is in part due to the finding that, "gender reassignment, involving ablation of normal organs for which there is no medical necessity because of underlying disease or pathology in the organ, remains an experimental treatment, associated with serious complications. In addition to questions regarding the safety and effectiveness of the surgical procedures themselves, there are serious questions about the long-term safety of administering testosterone and estrogen at therapeutic levels, required for the remainder of the life of the person who undergoes gender reassignment." [12]

24

N.Y. St. Reg. 5, 8 (1998).  Clearly, this determination has nothing to do with an individual's diagnosis of GID.

Therefore, plaintiff has failed to establish that the promulgation and implementation of 18 N.Y.C.R.R. 505.2(l) violates 42 U.S.C. 1396a(a)(17), 42 U.S.C. 1396a(a)(10(B)(i) and 42 C.F.R. 440.230(c).

## POINT III

### 18 N.Y.C.R.R. 505.2(l) DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

Plaintiff contends that State defendant is violating her rights under the equal protection clause of the Fourteenth Amendment to the United States Constitution by "denying care, services, drugs and/or supplies to Plaintiff to treat her GID while providing the same care, services drugs and/or supplies to categorically needy Medicaid recipients suffering from illness other than GID with no rational basis." Complaint, ¶ 66.  This contention is without merit and must be dismissed.

Simply, State defendant does not provide the care, services, drugs and/or supplies rendered for the purpose of gender reassignment to anyone regardless of his/her illness.  Even assuming arguendo that only individuals with GID request such treatment, 18 N.Y.C.R.R. 505.2(l) does not draw a distinction between those who suffer from GID and those that do not.

Even if this Court finds that 18 N.Y.C.R.R. does in fact distinguish between those individuals with GID and those without GID by failing to provide the same benefit to one but not the other, State defendant certainly had a rational basis to do so.  For example, as plaintiff argues, State defendant provides Medicaid coverage for  "the construction of artificial vagina

(vagina atresia or absence) with or without graft." Complaint, ¶ 32; see also 18 N.Y.C.R.R.

533.5. However, as set forth in the regulation, the construction of an artificial vagina is covered

only when the woman's genitalia suffers from a physical defect, for example, atresia or absense.

Id.

      As indicated in the comment period before 18 N.Y.C.R.R. 505.2(l) was promulgated

State defendant has a rational basis to draw the distinction between the ablation of healthy

organs for which there is no medical necessity because of underlying disease or pathology and

organs which do suffer from disease or pathology. See 12 N.Y. St. Reg. 5, 8 (1998). In addition,

the State defendant has concerns about the long-term safety of administrating testosterone and

estrogen at therapeutic levels for the remainder of the life of the person who undergoes gender

reassignment. Id.

      As the Supreme Court has recognized:

> In the area of economics and social welfare, a State does not
> violate the Equal Protection Clause merely because the
> classifications made by its laws are imperfect. If the classification
> has some reasonable basis, it does not offend the Constitution
> simply because the classification is not made with mathematical
> nicety or because in practice it results in some inequality. The
> problems of government are practical ones and may justify, if they
> do not require, rough accommodations - - illogical, it may be, and
> unscientific. A statutory discrimination will not be set aside if any
> state of facts reasonably may be conceived to justify it.

Dandridge v. Williams, 397 U.S. 471, 485 (1970) (internal citations omitted).

      This fundamental standard applies even in the State's administration of public welfare

assistance which is what is at issue here. Id. And even if this Court finds that the State

defendant's policy at issue here is not wise economic or social policy, the equal protection clause

does not "empower this Court to second-guess state officials charged with the difficult

responsibility of allocating limited public welfare funds among the myriad of potential recipients." Id., at 486-487.    Therefore, State defendant has not violated plaintiff's rights under the equal protection clause of the 14th Amendment. See Rush v. Johnson, 565 F.Supp. 856, 868-869 (N.D. Georgia 1983)(State's prohibition against reimbursement for transsexual surgery was rational and did not violate the equal protection clause); see also G.B. Lackner, 80 Cal.App.3rd 64, 86 (1978)(finding that the state's refusal to finance transsexual surgery which includes surgical removal and reconstruction of organs which are not diseased, damaged or deformed even though it does so in other circumstances when the organs are diseased, damaged or deformed does not violate the equal protection clause).

## CONCLUSION

For the reason set forth above, the Court should grant State defendant's motion to dismiss

the Complaint and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
      December 18, 2007

ANDREW M. CUOMO
Attorney General of the
  State of New York
<u>Attorney for State Defendant</u>
120 Broadway, 24th Floor
New York, New York 10271


By: _____
Deborah Hochhauser
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271
212-416-8629

To:    Yisroel Schulman, Esq.
      New York Legal Assistance Group
      Deborah Berkman, Esq.
      450 West 33rd Street, 11th Floor
      New York, New York 10001

      Sylvia Rivera Law Project
      Pooji Gehi, Esq.
      322 Eighth Ave., 3rd Floor
      New York, New York 10001

      Orrick, Herrington & Sutcliffe LLP
      Morton Dubin, Esq.
      666 Fifth Ave.
      New York, New York 10103

# TABLE OF CONTENTS

Pages

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statutory and Regulatory Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Allegations of the Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

POINT I     -     NEITHER THE FEDERAL STATUTORY PROVISIONS
                 NOR THE REGULATIONS UPON WHICH
                 PLAINTIFF RELIES CREATE AN ENFORCEABLE
                 RIGHT TO THE CARE, SERVICES, DRUGS OR SUPPLIES
                 REQUIRED FOR GENDER REASSIGNMENT . . . . . . . . . . . . . . . . . . 6

A.     The Statutes Which Plaintiff Relies Upon Do Not Create An Implied
       Right of Action Against State Defendant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

1.     Generally, There Is No Implied Right of Action Under Medicaid Act . . . . . . . . . . . . . . 9

2.     Analysis of the Specific Statutory Provisions Applicable Here
       Do Not Create a Private Right of Action for the Care, Services,
       Drugs or Supplies for Gender Reassignment Surgery . . . . . . . . . . . . . . . . . . . . . . . . . 10

       a.     42 U.S.C. 1396a(a)(10)(A) and (B) Do Not Create an Entitlement
              or a Private Right of Action for the Care Services, Drugs or Supplies
              for Gender Reassignment Surgery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       b.     42 U.S.C. 1396a(a)(10)(17) Does Not Create a Private Right of
              Action Against State Defendant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

B.     The Regulations Upon Which Plaintiff Relies Do Not Give Rise To
       A Privately Enforceable Federal Right . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

POINT II     -     THE STATE REGULATION CONSTITUTES
                   A REASONABLE CONSTRUCTION OF THE
                   FEDERAL MEDICAID STATUTE AND MUST
                   BE AFFORDED SUBSTANTIAL DEFERENCE . . . . . . . . . . . . . . . . 15

<u>Pages</u>

A.    18 N.Y.C.R.R. 505.2(1) Does Not Violate 42 U.S.C. 1396a(a)(10)(A)

      or 42 C.F.R. 440.210 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

B.    18 N.Y.C.R.R. 505.2(1) Does Not Violate 42 U.S.C. 1396a(a)(10)(B)(I)
      or 42 C.F.R. 440.240(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

C.    18 N.Y.C.R.R. 505.2(1) Does Not Violate 42 U.S.C. 1396a(a)(17), 42 C.F.R.
      440.230(c), 440.210 or 440.220 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

POINT III    -    18 N.Y.C.R.R. 505.2(l) DOES NOT VIOLATE THE
                         EQUAL PROTECTION CLAUSE OF THE
                         FOURTEENTH AMENDMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Cases                                                                    Page

TABLE OF AUTHORITIES

Cases                                                                    Page

Beal v Doe,
        432 U.S. 438 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Beal v. Doe,
        432 U.S. at 444 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Beal v. Doe,
        432 U.S. at 447 (internal citations omitted) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Blessing v. Freestone,
        520 U.S. 329 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Camacho v. Perales,
        786 F.2d 32 (2nd Cir. 1986)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 3

Carroll v. DeBuono,
        998 F. Supp. 190 (N.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15, 16

Chalfin v. Beverly Enterprises, Inc.,
        741 F. Supp. 1162 (E.D. Penn 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 10

Cheveron USA, Inc. v. NaturalResources Defense Council, Inc.,
        467 U.S. 837  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Cort v. Ash,
        422 U.S. 66 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 9, 10, 12

Cort v. Ash,
        422 U.S. at 78 (internal citations omitted) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

D.D. ex rel V.D. v. New York City Board of Education,
        465 F.3d 503 (2d Cir. 2006)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Dandridge v. Williams,
        397 U.S. 471 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26, 27

Dandrige v. Williams,
        397 U.S. 471 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

iii

Cases                                                                        Page

Gonzaga University v. Doe,
     536 U.S. 273 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Gonzaga v. John Doe,
     536 U.S. at 283 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Gonzaga v. John Doe,
     536 U.S. at 283-284 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Graus v. Kaladjian,
     2 F. Supp. 2d 540 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Harris v. James,
     127 F.3d 993 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

King v. Town of Hempstead,
     161 F.3d 112 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Pennhurst State Sch. & Hospitalv. Halderman,
     451 U.S. 1 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

People v. First of Tennessee v. Arlington Developmental Center,
     878 F. Supp. 97 (W.D. Tenn. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Perry v. Dowling,
     95 F.3d 231 (2nd Cir. 1996), citing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15, 16

Rodriguez v. City of New York,
     197 F.3d 611 (2nd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20, 22, 23, 24

Rush v. Johnson,
     565 F. Supp. 856 (N.D. Georgia 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

Schweiker v. Hogan,
     457 U.S. 569 [] (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

Sobky v. Smoley,
     855 F. Supp. 1123 (E.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

Solter v. Health Partners of Philadelphia,
     215 F. Supp. 2d 533 (E.D. Penn. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10, 13

Cases                                                                                          Page

Sparr v. Berks County,
        2002 U.S. Dist. LEXIS 13204 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Watson v. Weeks,
        436 F.3d 1152 (9th Cir. 2006)(holding that 1396a(a)(10) . . . . . . . . . . . . . . . . . . . .  12, 13

Westside Mothers v. Haveman,
        289 F.3d 852 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Wilder v. Virginia Hospital Association,
        496 U.S. 498 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Wilder v. Virginia Hospital Association,
        496 U.S. at 509 (citations omitted) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8


STATUTES

42 C.F.R. 240(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

42 C.F.R. 430.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

42 C.F.R. 435.1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

42 C.F.R. 440.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

42 C.F.R. 440.210 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 14, 17, 20, 23

42 C.F.R. 440.220 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

42 C.F.R. 440.230 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

42 C.F.R. 440.240 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

440.50 and 42 C.F.R. 440.70 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

12 N.Y. St. Reg. 5, 8 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

12 N.Y. St. Reg. 5, 8 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

12 N.Y. St. Reg. 5, 8 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

12 N.Y. St. Reg. 100, 103 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Or. Admin. R. 410-120-1200(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. §1232g . . . . . . . . . . . . . 7

Secretary of Health and Human Services ("HHS"). 42 U.S.C. 1396 . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. 1396a(a)(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

42 U.S.C. 1396a(a)(10)(17) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

42 U.S.C. 1396a(a)(17), 42 U.S.C. 1396a(a)(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25

42 U.S.C. 1396a(a)(10), 42 U.S.C. 1396a(a)(17) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Therefore, 42 U.S.C. 1396a(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

42 U.S.C. 1396a, et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Does Not Violate 42 U.S.C. 1396a(a)(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

42 U.S.C. 1396c . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. 1396d(a)(1)-( . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11, 18

42 U.S.C. § 1396d(a)(1)(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

7 Alaska Admin. Code (11) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

10 CCR 2505-10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

22 CSR 10-2.060(46) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

12 N.Y.C.R.R. 505.2(l) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

18 N.Y.C.R.R. 505.2(l) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
Article 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Federal Rule of Civil Procedure 12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

N.H. Admin. Rules, He-W 530.05(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Point II(A) <u>supra</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

<u>Rodrguez v. City of New York</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

Section 6 (xix) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Title 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Title XIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 12

Wis. Adm. Code HFS 107.03(23) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17