UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
TERRI CASILLAS,

                            Plaintiff,                    07 Civ. 4082 (PKC)

      -against-

                                                         MEMORANDUM
                                                         AND ORDER
RICHARD F. DAINES, Commissioner of the
New York State Department of Health,

                            Defendant.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        Plaintiff Terri Casillas alleges that the New York State Commissioner of Health has deprived her of rights protected by the Constitution and federal law in denying her Medicaid coverage for surgeries and services necessary to treat her Gender Identity Disorder ("GID"). According to her complaint, "[i]n persons diagnosed with transsexualism or profound GID, sex reassignment surgery, along with hormone therapy and real-life experience, is a treatment that has proven effective." (Compl. ¶ 39.) Plaintiff alleges that gender reassignment surgeries are medically necessary in her case. (Id. ¶ 58-59.)

        The New York State Department of Health ("DOH") has adopted a regulation that prohibits state Medicaid reimbursements for treatments for the "purpose of gender reassignment (also known as transsexual surgery)". 18 N.Y.C.R.R. § 505.2(l). Pursuant to this regulation, the DOH has denied Medicaid coverage to the plaintiff for gender reassignment-related treatments.

        Plaintiff challenges New York's regulation as conflicting with federal law. Her claims are brought under 42 U.S.C. § 1983 and the Fourteenth Amendment. Richard F. Daines, the New York State Commissioner of Health, now moves for judgment on the

pleadings under Rule 12(c), Fed. R. Civ. P.  For the reasons outlined below, the motion is granted.

    I.   <u>The Plaintiff's Allegations</u>

        Plaintiff is 48 years old, resides in the Bronx and is financially needy.  She receives food stamps and Supplemental Security Income benefits, which is her sole source of income.  (Compl. ¶ 41.)  She is financially eligible for the state-administered Medicaid program.

        Plaintiff was born a male but has "identified as a woman" since the age of 16.  She has been "living as a woman" since the age of 20.  (<u>Id.</u> ¶¶ 43-44.)  In or about 1978, plaintiff was diagnosed with GID and began hormone therapy in order for her body to conform more closely to the gender with which she identified.  (<u>Id.</u> ¶¶ 44-45.)  "Ms. C developed breasts and her facial and body hair lessened so that she no longer needed to shave her facial hair.  She developed a more traditionally female body with a smaller waist and larger fat pockets around the hips."  (<u>Id.</u> ¶ 45.)  As a result, "[h]er depression and sense of extreme unease about her body and gender dramatically lessened." (<u>Id.</u> ¶ 46.)

        Plaintiff alleges that beginning in approximately 1980 Medicaid paid for the hormone treatment but terminated coverage in or around September 2004.  (<u>Id.</u> ¶¶ 47-48.)  From September 2004 until May 2006, she was able to continue the treatments on an intermittent basis by using a prescription drug discount plan, but she is no longer able to afford to continue the treatments.  (<u>Id.</u> ¶¶ 49-51.)  She has suffered fatigue, nausea and body tremors as a result of cessation of treatments.  (<u>Id.</u> ¶ 52.)  "Among other things, the size of Ms. C's breasts decreased and she developed hair on her breasts.  Her voice deepened, and her skin became much rougher.  Ms. C was horrified by these physical changes." (<u>Id.</u>)

In January 2007, plaintiff was examined by a medical doctor who is Professor and Chairman of Plastic and Reconstructive Surgery at the Philadelphia College of Osteopathic Medicine who has opined that hormones, orchiectomy and vaginoplasty are medically necessary to treat plaintiff's GID. (Id.¶57.) This opinion is endorsed by plaintiff's current psychologist as well as by a prior treating psychiatrist. (Id.¶58-59.)

II.  New York's Regulation

After a notice and public comment period,[1] New York's DOH adopted a regulation disallowing reimbursement for services for gender reassignment treatments and services:

> Payment is not available for the care, services, drugs or supplies rendered for the purpose of gender reassignment (also known as transsexual surgery) or any care, services, drugs or supplies intended to promote such treatment.

18 N.Y.C.R.R. 505.2(1).

The DOH cited, among the reasons for adopting the regulation, the "responsibility both of allocating available resources and of assuring that services available to [Medicaid] recipients are safe and effective." 19 N.Y. Reg. 26 (July 16, 1997). It noted that "there may remain only one medical facility which continues to provide full scope of gender reassignment services." Id.

Also, in assessing public comments, the state agency observed that "there are equally compelling arguments indicating that gender reassignment, involving the ablation of normal organs for which there is no medical necessity because of underlying disease or

---

[1] See N.Y. Administrative Procedure Act §§ 202 and 203.  The initial notice was published on July 16, 1997. The regulation was continued in a regulation published January 8, 2003. (Enclosures to Letter of Johnson, July 14, 2008.) "A court may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment." Evans v. New York Botanical Garden, No. 02 Civ. 3591 (RWS), 2002 WL 31002814, at *4 (S.D.N.Y. Sept. 4, 2002). The same is true for a Rule 12(c) motion.  Plaintiff does not dispute the point. (Letter of Berkman, July 18, 2008.)

pathology in the organ, remains an experimental treatment, associated with serious complications." 20 N.Y. Reg. 5 (Mar. 25, 1998). It noted that "there are serious questions about the long-term safety of administering testosterone and estrogen at therapeutic levels, required for the remainder of the life of the person who undergoes gender reassignment." Id.

Notably, the state's regulation does not restrict reimbursement for all treatments or services resulting from a diagnosis of GID. Only those "for the purpose of gender reassignment" are non-reimbursable.

### III. Standard for Rule 12(c) Judgment on the Pleadings

The applicable legal standard for a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss for failure to state a claim. See King v. American Airlines, Inc., 284 F.3d 352, 356 (2d Cir. 2002). The Court must accept the complaint's allegations as true and draw all reasonable inferences in favor of the nonmoving party. See United States v. City of New York, 359 F.3d 83, 91 (2d Cir. 2004). "Complaints alleging civil rights violations must be construed especially liberally." Id. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions" are not sufficient to defeat the motion. Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (quoting Gebhardt v. Allspect, Inc., 96 F.Supp.2d 331, 333 (S.D.N.Y. 2000)). Although the Court is limited to facts as stated in the complaint, it may consider exhibits or documents incorporated by reference without converting the motion into one for summary judgment. See, International Audiotext Network, Inc. v. American Telephone & Telegraph Co., 62 F.3d 69, 72 (2d Cir. 1995).

IV. Standard Governing a Section 1983 Action Seeking
    <u>Enforcement of Rights Protected by Federal Statutes</u>

The first three claims in the complaint are pled under section 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983 (2008). Plaintiff alleges that Commissioner Daines is a person who acted under color of a state regulation, 18 N.Y.C.R.R. § 505.2(1), to deprive plaintiff of rights secured by three provisions of the federal Medicaid statute. 42 U.S.C. §§ 1396(a)(10)(A), 1396a(a)(10)(B)(i) and 1396a(a)(17).

Since 1980, it has been settled that section 1983 provides a remedy for a violation of rights protected by a federal statute. <u>Maine v. Thiboutot</u>, 448 U.S. 1 (1980) (claim for denial of welfare benefits under the Social Security Act). But not all violations of a federal statute by a state official are actionable under section 1983; plaintiff must show that a <u>right</u> secured by a federal statute has been violated. See <u>Golden State Transit Corp. v. Los Angeles</u>, 493 U.S. 103, 106 (1989). There is a three-factor test for determining whether a statute treats right that is capable of enforcement through a section 1983 action. <u>Blessing v. Freestone</u>, 520 U.S. 329, 340-41 (1997). See <u>Loyal Tire & Auto Center, Inc. v. Town of Woodbury</u>, 445 F.3d 136, 149-50 (2d Cir. 2006).

"First, Congress must have intended that the provision in question benefit the plaintiff." <u>Blessing</u>, 520 U.S. at 340. The Supreme Court clarified the meaning of this first element in <u>Gonzaga University v. Doe</u>, 536 U.S. 273 (2002). It expressly "reject[ed] the notion that our cases permit anything short of an unambiguously conferred right to support

a cause of action brought under § 1983." Id. at 283. "[I]t is rights, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under that section." Id.; NextG Networks of NY, Inc. v. City of New York, 513 F.3d 49, 52 (2d Cir. 2008). The inquiry under the first factor overlaps with that for determining whether a private right of action may be implied under a statute in that both inquiries require a showing that Congress intended to create a federal right. Gonzaga University, 536 U.S. at 283. For a statute to create a right enforceable either by way of private right of action or under section 1983, "its text must be 'phrased in terms of the persons benefited.'" Id. at 284 (quoting Cannon v. University of Chicago, 441 U.S. 677 (1979)). See also Rabin v. Wilson-Coker, 362 F.3d 190, 200 (2d Cir. 2004).

Under the second Blessing factor, "the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence." 520 U.S. at 340-41. This standard would be satisfied where "protections offered by the statute are clear and specific." Collier v. Dickinson, 477 F.3d 1306, 1310 (11th Cir. 2007). It would also be met if, for example, "[a] court can readily determine whether a state is fulfilling these statutory obligations by looking to sources such as a state's Medicaid plan, agency records and documents, and the testimony of Medicaid recipients and providers." Ball v. Rodgers, 492 F.3d 1094, 1115 (9th Cir. 2007).

The third Blessing factor would be met if "the statute . . . unambiguously impose[s] a binding obligation on the States." 520 U.S. at 341. "In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms." Id.

"Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by §1983." Gonzaga, 536 U.S. at 284; see also Rabin v. Wilson-Coker, 362 F.3d at 201. But the inquiry does not end there. The "rebuttable presumption" in favor of the plaintiff may be overcome by demonstrating that Congress expressly or impliedly foreclosed a remedy under section 1983. Blessing, 520 U.S. at 341. Congress impliedly forecloses a remedy under section 1983 "by creating a comprehensive enforcement scheme that is incompatible with individual enforcement." Id.

Each of the three statutory provisions is pled in separate claims for relief and will be separately addressed. Preliminarily, this Court notes that other Circuits, post-Gonzaga, have found the existence of some right enforceable by way of section 1983 under section 1396a(a)(10)(A). See Watson v. Weeks, 436 F.3d 1152, 1161 (9th Cir. 2006) (right to be cared for in a nursing facility or receive an equivalent level of care in community settings for individuals with serious medical problems and cognitive limitations); Sabree ex rel. Sabree v. Richman, 367 F.3d 180 (3d Cir. 2004) (right to medical assistance for intermediate care facility services); S.D. ex rel. Dickson v. Hood, 391 F.3d 581 (5th Cir. 2004) (right to early and periodic screening, diagnostic, and treatment services).[2] One district court has found, under section 1396a(a)(10)(B), an unambiguously conferred right upon residents of El Paso to receive the same level of service as recipients in other parts of the state. Equal Access for El Paso, Inc. v. Hawkins, 428 F. Supp. 2d 585 (W.D. Tex. 2006), rev'd on other grounds, 509 F.3d 697 (5th Cir. 2007); see also Michelle P. ex rel. Deisenroth v. Holsinger, 356 F. Supp. 2d 763, 768 (E.D. Ky. 2005) (right under section 1396a(a)(10)(B) to receive community based residential

---

[2] Several pre-Gonzaga courts have also found enforceable rights under 1396a(a)(10). See Westside Mothers v. Haveman, 289 F.3d 852 (6th Cir. 2002); Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs., 293 F.3d 472 (8th Cir. 2002); Miller v. Whitburn, 10 F.3d 1315 (7th Cir. 1993).

Medical Assistance services). The Ninth Circuit has found that section 1396a(a)(17) does not unambiguously confer a right upon persons with serious medical problems and cognitive limitations to the same care in a nursing facility as in a community setting. Watson v. Weeks, 436 F.3d at 1162. One judge of this Court has found that section 1396a(a)(17) conferred a right upon a morbidly obese individual to a seat-lift chair. Borriello v. Novello, No. 02 Civ. 7946, Order, Docket # 24, (KMW) (S.D.N.Y. Mar. 24, 2004).

Whether a statute unambiguously confers a right is not a binary question. The statute may confer a right of some type upon some class of persons without conferring the particular right asserted by the plaintiff in suit. "It [is] incumbent upon [the party] to identify with particularity the rights they claimed, since it is impossible to determine whether [the statute], as an undifferentiated whole, gives rise to undefined 'rights.'" Blessing, 520 U.S. at 342. "Only when the complaint is broken into manageable analytic bites can a court ascertain whether each separate claim satisfies the various criteria we have set forth for determining whether a federal statute creates rights." Id.

In assessing whether the Blessing and Gonzaga standards are met, plaintiff urges that this Court take account of certain regulations, 42 C.F.R. §§ 440.210, 440.230(c) and 440.240(b), that implement and interpret the three statutory sections. The defendant similarly asks the Court to take account of a regulation which permits state plans to place "appropriate limits" on services. 42 C.F.R. § 440.230(d). Each of the regulations were promulgated pursuant to a broad authority to "make and publish such rules and regulations, not inconsistent with this chapter, as may be necessary to the efficient administration of the functions with which each is charged under this chapter." 42 U.S.C. § 1302(a).

Section 1983 provides a remedy to enforce rights "secured by the Constitution and laws" of the United States. Whether a federal regulation may give rise to enforceable rights under section 1983 has not been decided in this Circuit. See Rodriguez v. City of New York, 197 F.3d 611, 617 (2d Cir. 1999) (assuming arguendo that a right may be founded on a Medicaid regulation); King v. Town of Hempstead, 161 F.3d 112, 115 (2d Cir. 1998). See also Dajour B. v. City of New York, No. 00 Civ. 2044 (JGK), 2001 WL 830674, at *8 n.7 (S.D.N.Y. July 23, 2001).

Plaintiff does not rely upon any regulation as the source of rights she seeks to enforce. Rather, she asserts that the federal regulations are important in discerning the meaning of the statute. "[W]hen an agency invokes its authority to issue regulations, which then interpret ambiguous statutory terms, the courts defer to its reasonable interpretations." Federal Exp. Corp. v. Holowecki, __ U.S.___, 128 S.Ct. 1147, 1154 (2008) (citing Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-845 (1984)). The regulations will be considered as valuable tools in interpreting the statutory provisions.

V.  Application of Gonzaga and Blessing Factors to the Statutes at Issue

A.  First Cause of Action: Rights Purportedly Secured by Section 1396a(a)(10)(A)

The First Cause of Action, addressed solely to section 1396a(a)(10)(A), asserts that the state Commissioner is "refusing to provide required Medicaid services to Plaintiff . . . ." (Compl. ¶ 63.) The services are elsewhere defined as "feminizing hormones and vaginoplasty (removal of the penis and creation of a vagina) with orchiectomy (removal of the testes)." (Compl. ¶ 57.) Thus, the right to receive Medicaid payment for these services is the right she asserts is unambiguously conferred by section 1396a(a)(10)(A).

Subdivision 10(A) of section 1396a(a) mandates that a state's Medicaid plan provide "for making medical assistance available, including at least the care and services listed in paragraphs (1) through (5), (17) and (21) of section 1396d(a) of this title" to all eligible individuals. The plaintiff alleges that she is "categorically needy" and is, thus, an eligible person, a point on which there does not seem to be a dispute. The referenced subsections of section 1396d identify broad categories of coverage. For example, subdivision 1 covers "inpatient hospital services (other than services in an institution for mental diseases)," subdivision 2(A) covers "outpatient hospital services," subdivision 3 covers "other laboratory and X-ray services," subdivision 17 covers midwife services and subdivision 21 covers services rendered by nurse-practitioners. Pointedly, the subdivisions in conjunction with section 1396a(a)(10)(A) do not mandate that a particular level or type of care must be provided.

As an aid to interpretation of section 1396a(a)(10)(A), plaintiff relies upon section 440.210 of the regulations. (Compl. ¶ 63.) Under section 440.210(a)(1), a state plan must provide "categorically needy recipients" with those "services defined in § 440.10 though 440.50 9 [and] 440.70 . . . ." For example, section 440.10 (a) defines "inpatient hospital services" as services that:

> (1) Are ordinarily furnished in a hospital for the care and treatment of inpatients;
> (2) Are furnished under the direction of a physician or dentist; and
> (3) Are furnished in an [appropriate and approved] institution . . . .

42 C.F.R. § 440.210(a).

Plaintiff argues that the regulation demonstrates that the statute was intended to confer an individual right upon all eligible individuals to receive all inpatient services, including gender reassignment surgeries, at an appropriate institution, provided

that those services are ordinarily furnished in a hospital and are under the direction of a medical doctor.

But it is settled that a state's Medicaid plan need not provide reimbursement for all medical procedures of a categorically eligible individual. See Beal v. Doe, 432 U.S. 438, 444 (1977) (State plan need not provide coverage for non-therapeutic abortions). "[N]othing in the statute suggests that participating states are required to fund every medical procedure that falls within the delineated categories of medical care." Id.

Consistent with the foregoing, section 440.230(d) of the Secretary's regulations provides that a state plan may contain broad exclusions. Specifically, the regulation provides that "[t]he [state] agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures." 42 C.F.R. § 440.230(d). Thus, in the Secretary's view, section 1396a(a), permits a state plan to place "appropriate limits" upon a "service" regardless of an individual medical doctor's view of the appropriateness of the categorical limitation.

The inclusion of "utilization control procedures" as an express basis for "appropriate limits" has several important implications for this case. It captures concepts that do not relate to the care of any one particular patient but looks to actual or expected utilization over a broader population. This focus is inconsistent with a right conferred upon an individual or class of individuals. The "right" conferred in section 1396a(a)(10)(A) is not unambiguously conferred upon any individual or class of individuals because it is subject to "appropriate limits" which are based upon state-wide resources and patterns of usage.

The plaintiff reads section 1396a(a)(10) in absolute terms as requiring reimbursement for all inpatient services at a qualifying facility which are deemed necessary

by a physician. But that interpretation of the statute is inconsistent with the regulation adopted by the Secretary which permits the states to place "appropriate limits" based upon a non-exhaustive listing of "criteria". "[R]egulations, if valid and reasonable, authoritatively construe the statute itself . . . ." Alexander v. Sandoval, 532 U.S. 275, 284 (2001). Plaintiff makes no challenge to section 440.230(d) as invalid or unreasonable. Because section 1396a(a), as authoritatively construed, allows for categorical limits on treatments, it follows that subdivision 10 of the statute cannot be said to have unambiguously conferred a right upon this plaintiff to a particular service or treatment.

The existence of the broad carve-out in section 440.230(d) raises another fundamental problem in the Blessing analysis. Were this Court to conclude that a right is unambiguously conferred on individuals or a class of individuals, the claim would fail on the second element of Blessing: "the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence." 520 U.S. at 340-41.

While district courts are generally competent to adjudicate claims of medical necessity arising in many contexts, the same may not be said as to the loose standard of "utilization control procedures." Encompassed in the phrase is the concept that there are a limited number of hospital beds and a limited number of physicians and nurses within a state and that the use of these resources may be controlled. But the phrase is susceptible to multiple plausible interpretations and lacks a fixed meaning. In terms of the second Blessing element, it is a "vague and amorphous" concept, the application of which would, therefore, strain judicial competence. This is not an instance where a court could "readily determine whether a state is fulfilling these statutory obligations by looking to sources such as a state's Medicaid plan, agency records and documents, and the testimony

of Medicaid recipients and providers." Ball v. Rodgers, 492 F.3d at 1115.  The protections could hardly be characterized as "clear and specific." Collier v. Dickinson, 477 F.3d at 1310.

Further, the regulation is not limited to "medical necessity" or "utilization control procedures" and a state may also employ other "such criteria" in framing "appropriate limits." This enhances the vagueness problem.[3]

In summary, subdivision 10(A) of section 1396a(a) does not unambiguously confer the right that this plaintiff asserts.  Alternatively, enforcement of the right would require the application of vague and amorphous standards and, therefore, would strain judicial competence.  Blessing, 520 U.S. at 340-41.  It is not necessary to reach the other elements under Blessing.  Id.

  B.  Second Cause of Action: Rights Purportedly Secured by section 1396a(a)(10)(B)(i)

Plaintiff asserts that section 1396a(a)(10)(B)(i) confers a right to the relief sought in this action.  The section provides as follows:

> (B) that the medical assistance made available to any individual described in subparagraph (A)–
>   (i) shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual, and
>   (ii) shall not be less in amount, duration, or scope than the medical assistance made available to individuals not described in subparagraph (A);

42 U.S.C. § 1396a(a)(10)(B)(i) (2008).  Plaintiff also urges that 42 C.F.R. § 440.240(b) sheds important light on the meaning of section 1396a(a)(10)(B)(i).  (Compl. ¶ 64).  The regulation provides as follows:

---

[3] In Golden State Transit Corp., the Court looked to regulations promulgated under the statute and, based upon those regulations, concluded that the statute did not create a vague and amorphous standard.  493 U.S. at 111-112. Here, an examination of the accompanying regulations leads to the opposite result.

> The plan must provide that the services available to any individual in the following groups are equal in amount, duration, and scope for all recipients within the group:
>
> (1) The categorically needy.
> (2) A covered medically needy group.

42 C.F.R. § 440.240(b) (2008). Section 1396a(a)(10)(B) has been interpreted to mean that "if a state elects to provide Medicaid to the medically needy, it must also provide it to the categorically needy and that it may not provide more assistance to the former group than to the latter . . . ." Rodriguez v. City of New York, 197 F.3d at 615. Also, "states may not provide benefits to some categorically needy individuals but not to others." Id.

Plaintiff reads more than this into the statute and regulation. She interprets it to mean that if an inpatient treatment or service is made available to a group of recipients with one diagnosis, then that treatments or services must be made available to all recipients with other diagnoses so long as they are directed by the individuals' physicians. Plaintiff argues that because an orchiectomy is an accepted and reimbursable treatment for testicular cancer, then it is necessarily reimbursable for this plaintiff upon a determination by her physician that it is a necessary treatment for a diagnosis of GID. Similarly, because a mastectomy is an indicated and reimbursable treatment for breast cancer, then a female-to-male transsexual with a diagnosis of GID would be entitled to reimbursement for the same treatment. (7/2/08 Tr. 39.) In plaintiff's view, any treatment that is reimbursable for one diagnosis would be a reimbursable treatment for a different diagnosis if it were deemed by the patient's doctor to be a medical necessity.[4] Plaintiff has not cited to an authoritative interpretation by the Secretary or his designee supporting her argument.

---

[4] Taking plaintiff's interpretation to an extreme, if rhinoplasty were reimbursable for a victim of a trauma such as an automobile accident, then it also would be reimbursable to a person diagnosed with major depressive disorder attributable in substantial part to having been born with a misshapen but otherwise

In <u>Rodriguez</u>, the Court rejected a theory that because the state had provided funding for one type of service, there was an enforceable right under section 1396a(a)(10)(B) to a comparable, though not identical, type of service:

> Appellees' discrimination claim is entirely different from the types of discrimination described above. They do not contend that the medically needy receive coverage in New York not afforded to the categorically needy or that some distinction is drawn among the categorically needy. Instead, they claim that, because safety monitoring is "comparable" to the personal care services already provided by New York, the failure to provide such monitoring violates Section 1396a(a)(10)(B) . . . . Appellees attempt to graft a new requirement on this Section: If two different benefits are "comparable" and one is provided, the other must be as well. Thus, they conclude, once a state provides assistance for any personal-service activity comparable to safety monitoring, it must also provide safety monitoring.

<u>Id.</u> at 615-16 (citation omitted).

The <u>Rodriguez</u> Court went on to describe the "comparable" concept urged by the plaintiff in that case as "an elastic concept" that would provide a disincentive to providing optional services that later may be found "comparable" with some other service. 197 F.3d at 616. A similar disincentive would be created by the rule urged in this case because the state would have to consider other possible diagnoses for which the treatment might be prescribed before deciding whether to make it available for any single condition.

If Congress had intended to compel a state to provide a treatment for all diagnoses if the treatment were provided for any diagnosis, one would have expected it to have done so in clear language. <u>Cf.</u> <u>Whitman v. American Trucking Ass'n, Inc.</u>, 531 U.S. 457, 468 (2001) (Congress does not "hide elephants in mouseholes").

---

healthy nose, provided the patient's doctor deemed the surgery to be medically necessary. A state could endeavor to adopt a regulation precluding all surgeries for appearance improvement purposes but, in plaintiff's view, a person disadvantaged by the provision would have a claim under section 1983 that could not be resolved without a trial. (7/2/08 Tr. 39-41.)

Section 1396a(a)(10)(B)(i) does not unambiguously confer a right of the nature claimed by plaintiff upon her or upon a class of persons of which she is a member.

The discussion and analysis of the state's lawful right under section 440.230(d) to place "appropriate limits" for "such criteria" as "medical necessity" or "utilization control procedures" applies with equal force to section 1396a(a)(10)(B)(i) and further supports the conclusion that neither the first nor second elements of Blessing are met.

C. Third Cause of Action: Rights Purportedly Secured by Section 1396a(a)(17)

Section 1396a(a)(17), a provision of considerable length, requires a state to develop "reasonable standards" for its plan. "This language confers broad discretion on the states to adopt standards for determining the extent of medical assistance, requiring only that such standards be 'reasonable' and 'consistent with the objectives' of the Act." Beal v. Doe, 432 U.S. at 444.

At argument, plaintiff's counsel urged that the reasonableness requirement means that an individual has a right to a plan that is free from "discriminatory animus." (7/2/08 Tr. 16-17.) Implicit in the argument was that New York's plan failed this test because it did not provide appropriate treatment for GID. The statute, given its plain meaning, imposes an obligation upon a participating state to develop a reasonable plan. Subdivision (a)(17) places several specific requirements on the contents of the plan. There is no language which could be reasonably construed as unambiguously conferring the right which plaintiff asserts.[5]

---

[5] "The mere fact that all the Medicaid laws are embedded within the requirements for a state plan does not, by itself, make all of the Medicaid provisions into ones stating a mere institutional policy or practice rather than creating an individual right." Rio Grande Community Health Center, Inc. v. Rullan, 397 F.3d 56, 74 (1st Cir. 2005) (interpreting § 1320a-2). See also Ball v. Rodgers, 492 F.3d 1094, 1111 (9th Cir. 2007) (discussing the "Suter fix").

Plaintiff also urges that the statute be read in conjunction with 42 C.F.R. §440.230, a regulation that provides as follows:

> (a) The plan must specify the amount, duration, and scope of each service that it provides for–
>
>> (1) The categorically needy; and
>> (2) Each covered group of medically needy.
>
> (b) Each service must be sufficient in amount, duration, and scope to reasonably achieve its purpose.
>
> (c) The Medicaid agency may not arbitrarily deny or reduce the amount, duration, or scope of a required service under §440.210 and 440.220 to an otherwise eligible recipient solely because of the diagnosis, type of illness, or condition.[6]
>
> (d) The agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures.

On its face, subsection (b) would require a plan to provide that a patient hospitalized, for example, with a diagnosis of pneumonia receive treatment for that condition that was "sufficient in amount, duration, and scope to reasonably achieve its purpose." Subsection (c) would appear to prohibit, among other things, a plan from treating less favorably a patient with pneumonia with an accompanying diagnosis of HIV-AIDS than one with pneumonia without the accompanying diagnosis of HIV-AIDS.

But subsections (b) and (c) of section 440.230 must be read in conjunction with subsection (d), discussed at length above, which allows "appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures." Subsection (d) relates to the entirety of section 1396a(a) including subsection (17). For the reasons stated, the existence of the carve-out authority precludes a finding that the right that this

---

[6] Like Russian stacking dolls, section 440.210, in turn, refers to services provided pursuant to §§ 440.10 through 440.50, 440.70, 440.165 and 440.166. The referenced sections speak in terms of broad categories of health services, such as inpatient and outpatient hospital services, and do not speak to any surgical procedure relevant to this case.

plaintiff invokes is unambiguously conferred by the statute. It also would be a vague and amorphous standard for the reasons previously stated.

VII. Plaintiff's Equal Protection Claim

Plaintiff also challenges New York's prohibition on Medicaid reimbursements for gender reassignment surgeries under the Equal Protection Clause of the Fourteenth Amendment. It provides that "[n]o State shall deny to any person within its jurisdiction the equal protection of laws." U.S. Const. amend. XIV, § 1. Plaintiff does not assert membership in any suspect classification or that the denial of Medicaid reimbursement for gender reassignment surgeries implicates a fundamental right. Plaintiff asserts that she has been denied equal protection on the basis of her diagnosis (P. Mem. 19) and acknowledges that the claim is governed by a rational basis standard. (7/2/08 Tr. 35-36.)

Benefit programs often draw distinctions between those who are eligible for coverage and those who are not. There is broad constitutional latitude in drawing those distinctions:

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality."

Dandridge v. Williams, 397 U.S. 471, 485 (1970) (quoting Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78 (1911)). To survive scrutiny, the difference in treatment among otherwise similarly situated individuals must be "rationally related to legitimate governmental objectives." Thomas v. Sullivan, 922 F.2d 132, 139 (2d Cir. 1990).

Defendant Daines relies upon the statements accompanying the adoption of New York DOH's regulation, section 505.2(1), as providing a rational basis for excluding

certain treatments for a diagnosis of GID.  See Richardson v. Belcher  404 U.S. 78, 81-82 (1971) ("To find a rational basis for the classification created by [the statute], we need go no further than the reasoning of Congress as reflected in the legislative history."); Walker v. Exeter Region Co-op. School Dist., 284 F.3d 42, 46 (1st Cir. 2002) ("Although legislative history is by no means necessary to sustain a classification as rational, both distinctions articulated by the legislature seem plausible enough to satisfy the lenient rational basis test."). See also Estate of Kunze v. C.I.R., 233 F.3d 948, 954 (7th Cir. 2000) ("[T]he rational basis justifying a statute against an equal protection claim need not be stated in the statute or in its legislative history; it is sufficient that a court can conceive of a reasonable justification for the statutory distinction.").

   The state agency's assessment of public comment on the proposed regulation explained succinctly the reasons for denying reimbursement of gender reassignment surgeries and associated treatments.  It cited "serious complications" from the surgeries and danger from life-long administration of estrogen.  20 N.Y. Reg. 5 (Mar. 25, 1998).  This provided a more than sufficient rational basis which was related to legitimate government interests—the health of its citizens and the conservation of limited medical resources.

   In the face of the stated rationale of which this Court may take judicial notice, judgment on the pleadings is granted to defendant on the Equal Protection claim.

 VII. Conclusion

   The motion of defendant Daines for judgment on the pleadings is granted.  Defendant Robert Doar, Commissioner of the New York City Human Resources Administration, having previously been dismissed from the action, the Clerk shall enter final judgment.

In the face of the stated rationale of which this Court may take judicial notice, judgment on the pleadings is granted to defendant on the Equal Protection claim.

VII.  Conclusion

The motion of defendant Daines for judgment on the pleadings is granted. Defendant Robert Doar, Commissioner of the New York City Human Resources Administration, having previously been dismissed from the action, the Clerk shall enter final judgment.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       August 5, 2008